UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GOTION, INC.,                                No. 1:24-cv-275

                    Plaintiff,               Hon.

v.

GREEN CHARTER TOWNSHIP,
a Michigan general law township,

                    Defendant.

_____/

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION


## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

The national and state EV battery landscape ....................................................2

Gotion and the Project ......................................................................................2

State and Local initiatives to secure the Project for West Michigan ..................3

The Grant Agreement .......................................................................................5

The Township executes a Development Agreement to assist Gotion with the
Project ..............................................................................................................5

The Township approves Resolution No. 1012023 to extend water to the Project..............6

Township Board turnover and rescission of the Water Extension Resolution ...................8

Gotion notifies the Township of its breaches of the Development Agreement ................10

The Township continues to breach the Development Agreement .....................................11

ARGUMENT ................................................................................................................. 12

I.      Gotion is likely to succeed on the merits of its breach of contract claim. .............13

II.     Gotion will suffer irreparable harm if the Court does not issue a
        preliminary injunction...............................................................................17

III.    Both the balance of harms and the public interest weigh strongly in favor
        of a preliminary injunction.......................................................................24

CONCLUSION.............................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7-Eleven, Inc. v. Khan*,
   977 F. Supp. 2d 214 (E.D.N.Y. 2013) ...................................................................24

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
   511 F.3d 535 (6th Cir. 2007) ..............................................................................13

*Cherry Ridge, LLC v. Canton Charter Tp.*,
   No. 12-CV-15126, 2013 WL 686491 (E.D. Mich. Feb. 26, 2013).........................17

*Constit. Pipeline Co., LLC v. A Permanent Easement for 0.42 Acres and
   Temporary Easements for 0.46 Acres, In Schoharie Cnty., NY*,
   No. 1:14-CV-2057 (N.D.N.Y. Apr. 17, 2015) ........................................................20

*D.T. v. Sumnner Cnty. Schs.*,
   942 F.3d 324 (6th Cir. 2019) ..............................................................................18

*Del. River Joint Toll Bridge Comm'n v. Oleksiak*,
   No. 19-2978, 2019 WL 3545851 (E.D. Penn. Aug. 2, 2019) ................................19

*In re DeLorean Motor Co.*,
   755 F.2d 1223 (6th Cir. 1985) ............................................................................17

*Golf Vill. N., LLC v. City of Powell*,
   333 F. Supp. 3d 769 (S.D. Ohio Aug. 9, 2018) ....................................................23

*Gordon v. New Engl. Cent. R.R.*,
   No. 2:17–cv–00154, 2017 WL 6327105 (D. Vt. Dec. 8, 2017).............................24

*Hoxworth v Blinder, Robinson & Co., Inc.*,
   903 F.2d 186 (3d Cir. 1990)................................................................................23

*Jacobs v. Detroit Auto. Inter-Ins. Exch.*,
   107 Mich. App. 424, 309 N.W.2d 627 (1981) ......................................................14

*N. Border Pipeline Co. v 64.111 Acres*,
   125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) ...........................................................22

*NACCO Materials Handling Gp. v. Toyota Materials Handling USA, Inc.*,
   246 F. App'x. 929 (6th Cir. 2007) .......................................................................18

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't.*,
   305 F.3d 566 (6th Cir. 2002) ..............................................................................17

Page(s)

*Parkview Homes, Inc. v. City of Rockwood*,
  No. 05-CV-72708, 2005 WL 2468433 (E.D. Mich. Oct. 6, 2005) ........................................23

*Perryville Gas Storage, LLC, v. 40 Acres*,
  No. 3:11-cv-1635, 2011 WL 4943318 (W.D. La. Oct. 17, 2011)...........................................23

*Philip Morris USA, Inc v. Scott*,
  561 U.S. 1301 (2010) (Scalia, J.) .......................................................................................22

*RECO Equip., Inc. v. Wilson*,
  No. 20-4312, 2021 WL 5013816 (6th Cir. Oct. 28, 2021) ....................................................17

*Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cnty. Fla*,
  No. 3:16-CV-274, 2016 WL 318895 (M.D. Fla. June 8, 2016) .............................................19

*Signode Corp. v. Weld-Loc Sys., Inc.*,
  700 F.2d 1108 (7th Cir. 1983) .............................................................................................23

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
  119 F.3d 393 (6th Cir. 1997) ...............................................................................................12

*Superior Consulting Co. v. Walling*,
  851 F. Supp. 839 (E.D. Mich. 1994)....................................................................................25

*Synthes Spine Co., L.P. v. Calvert*,
  270 F. Supp. 2d 939 (E.D. Mich. 2003)................................................................................13

*Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.14 Acres*,
  Nos. 17-715 17-720, 17-722, 17-723, 17-1725, 2017 WL 3624250 (E.D. Penn.
  Aug. 23. 2017) .....................................................................................................................20

*Wal-Mart Stores, Inc. v. Cty. of Clark*,
  125 F. Supp. 2d 420 (D. Nev. 1999).....................................................................................23

*Warren v. City of Athens*,
  411 F.3d 697 (6th Cir. 2005) ...............................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).................................................................................................................18

**Rules and Regulations**

Fed. R. Civ. P. 65....................................................................................................................12

## INTRODUCTION

This case presents a simple breach of contract claim arising from the unlawful actions of the new members of the Green Charter Township Board, the majority of whom are motivated by admitted anti-Gotion animus. In August 2023, just months before the prior Board was ousted from office, the Township executed a Development Agreement with Gotion, Inc. Pursuant to that agreement, the Township agreed to assist Gotion in obtaining any authorizations necessary to advance Gotion's electric vehicle battery component manufacturing project. Consistent with their obligations under the agreement, in October 2023, the Township approved plans submitted by Gotion to allow the City of Big Rapids to connect its water system to Gotion's 270-acre site.

Just one month later—less than a week after the new Board members took office—the new Township Board rescinded that approval. Then, at its very next meeting, the Board also rescinded the Township's resolution to support Gotion's project and to "make every effort to . . . assist[] Gotion Inc. in their efforts to join our community." And, shortly before this motion was filed, the Township served a Notice of Preliminary and Permanent Injunction on the Mecosta County Planning Commission, in which it threatened a lawsuit against the County if the County did not stop processing Gotion's site plan and special use permit application that was submitted to the County for review on March 1, 2024. This despite the fact that Mecosta County Planning Commission is currently the sole body with zoning jurisdiction with respect to Gotion's site plan and special use permit application.

The Township's continued breaches of its contractual obligations to Gotion and will cause Gotion imminent and irreparable harm. Accordingly, this Court should issue a preliminary injunction directing the Township to comply with its obligations under the Development Agreement, including reinstating the resolutions it has rescinded to extend water to the project site.

1

# BACKGROUND

## The national and state EV battery landscape

In August 2022, the United States Congress passed, and the President signed into law, the Inflation Reduction Act ("IRA"). Among other things, the IRA provides tax incentives for domestic green energy initiatives. (Compl. ¶ 28.) Within one year of its passage, the IRA prompted more than $110 billion of capital investments announced for clean energy manufacturing projects, including $70 billion towards establishing an electric vehicle ("EV") and battery supply chain in the United States. (*Id*.) The IRA provides a much-needed overhaul to the domestic production of EVs and EV batteries: today, the United States accounts only for approximately 10% of EV assembly globally and 7% of EV battery production. (*Id.* ¶ 29.)

Michigan is one of the leading states in the production of green and renewable energy. As laid out in its Michigan Healthy Climate Plan, the state has taken ambitious aim at obtaining 100% carbon neutrality by 2050. (*Id.* ¶ 31.) Michigan's commitment to renewable energy initiatives was reaffirmed recently, in November 2023, when the state legislature passed a series of landmark clean energy laws. *See* 2023 Mich. Pub. Acts 229, 231, 233-35. The state's endorsement of these initiatives has spurred $20 billion in investments in various energy-related sectors within one year of the passage of the IRA and has secured for Michigan 14 projects in clean energy, battery, and EV manufacturing, including Gotion's proposed battery-component plant.

## Gotion and the Project

Gotion is a subsidiary of Gotion High-Tech Co., one of the world's leading manufacturers of EV batteries. Gotion High-Tech Co. has also been named on Bloomberg's list of top 25 new energy producers. Gotion has been engaged since 2022 in the planning and construction of a new battery component manufacturing site and industrial park in Mecosta County, Michigan (the "Project"). (**Exhibit 1**, C. Thelen Decl. ¶ 2.) Once completed, the Project will annually produce

up to 400,000 tons of cathode material, a critical component of lithium-ion batteries used in electric and hybrid vehicles. (Compl. ¶ 15.) The Project is one component of Gotion's national strategy to establish a domestic EV battery supply chain. (**Ex. 1**, C. Thelen Decl. ¶ 3.) Gotion operates a battery pack factory in Fremont, California, and expects to begin producing lithium-ion batteries in a new facility in Illinois by the end of 2024. (*Id.* ¶ 4.) Gotion has undertaken these initiatives with the support of German automobile manufacturer Volkswagen, which holds approximately one quarter of Gotion's shares and is a major purchaser of Gotion's batteries. (*Id.* ¶ 5.)

Locally, the Project presents an enormous opportunity for Mecosta County and West Michigan. Gotion intends to invest $2.36 billion into the Project, which, once operational, will employ approximately 2,350 individuals. (**Ex. 1**, C. Thelen Decl. ¶ 7.) The hourly compensation for these jobs will be around $24.50, almost 150% of Mecosta County's average hourly wage of $16.50. (*Id.* ¶ 8.) Combined with benefits such as health insurance and paid vacation, the standard employee compensation package projects to be around $60,000. (*Id.* ¶ 9.)

Gotion anticipates that the Project will bring numerous indirect benefits to Mecosta County and West Michigan, such as significant improvements to local infrastructure and the generation of ancillary businesses to support a growing and more prosperous population. (*Id.* ¶ 10.) Moreover, Gotion plans to partner with nearby educational institutions to train a new generation of professionals from the local population. (*Id.* ¶ 11.) Overall, the Project is expected to generate nearly $12 billion in personal income for those directly and indirectly employed by the Project over the next 20 years. (*Id.* ¶ 12.) The anticipated economic growth will bring transformative economic vitality to Mecosta County and its surroundings.

**State and Local initiatives to secure the Project for West Michigan**

A series of historic state and local initiatives secured the Project for Mecosta County. In September 2022, Mecosta County, Big Rapids Township, and the Township approved the

designation of a 30-year Renaissance Zone tax abatement to attract Gotion and the Project to the area. (Compl. ¶ 35.) The designation will provide the Project with an estimated tax incentive package of $540 million. (*Id.* ¶ 36.)

On September 29, 2022, Gotion submitted to the Michigan Economic Development Corporation ("MEDC") an application for financial assistance to facilitate land acquisition, public infrastructure improvements, engineering, permitting, wetland mitigation, and other associated costs in support of the Project. (*Id.* ¶ 37.) The MEDC is a subdivision of the Michigan Strategic Fund ("MSF"), a Michigan state agency that assists in identifying and promoting opportunities for economic development in the State of Michigan. The MSF approved Gotion's application on October 5, 2022, for a grant of up to $50 million through the Strategic Site Readiness Program ("SSRP"), a program that offers economic assistance for the development of investment-ready sites throughout the State of Michigan and improves the infrastructure in the local community. (*Id.* ¶ 39.) The MSF also approved an additional $125 million Critical Industry Program ("CIP") grant. (*Id.* ¶ 40.) With the combined efforts state and local governments put forward a highly competitive package of $715 million in tax incentives and public grants. (**Ex. 1**, C. Thelen Decl. ¶ 19.) Their efforts paid off when Gotion choose Michigan as the site for the Project over forty-four greenfield sites and twelve brownfield sites throughout the United States. (*Id.*)

On December 13, 2022, the Township pledged its support for Gotion and the Project by unanimously adopting Resolution No. 01-122022 (the "Support Resolution"). (Compl. ¶ 42.) In that Resolution, the Township acknowledged that it "strongly supports efforts to bring Gotion Incorporated to our township and community" and declared "that we will make every effort to work in the interests of our constituents and community by assisting Gotion Inc. in their efforts to join our community." (*Id.*) In July 2023, the Township was selected as the sole site for the Project.

**The Grant Agreement**

On September 15, 2023, Gotion and the MSF executed a Grant Agreement, which defines the terms and conditions for the disbursement of SSRP and CIP grant funds. (*Id.* ¶ 43.) The Grant Agreement requires Gotion and the Township to enter into a separate agreement to provide for the completion of the public infrastructure improvements and site development in the Township necessary for the continuing viability of the Project. (*Id.* ¶ 44.) The Grant Agreement additionally provides that the Township's failure to substantially perform obligations regarding the improvement of public infrastructure under the separate agreement between Gotion and the Township could constitute breach of the Grant Agreement. (**Ex. 3** to Compl., Grant Agmt. § 5.1(h); *see also id.* at Ex. A, ¶ (q).). In the event of the Grant Agreement, the MSF may, among other remedies, suspend grant disbursements, terminate the Agreement, or place a freeze on Project funds. (*Id.* §§ 5.2, 5.3.)

**The Township executes a Development Agreement to assist Gotion with the Project**

Pursuant to the Grant Agreement, Gotion and the Board executed the Development Agreement to define the terms and conditions governing the completion of public infrastructure improvements and site development in the Township necessary for the Project. In a regular meeting of the Township Board on August 1, 2023, a first draft of the Development Agreement was unanimously approved and then-Supervisor James Chapman was unanimously authorized to finalize its terms and conditions with Gotion. (Compl. ¶ 45.)

In accordance with the unanimous approval of Township Board, then-Supervisor James Chapman and then-Clerk Janet Clark finalized the Development Agreement and executed it on August 22, 2023. (*See* **Ex. 1** to Compl., Dev. Agmt.) In relevant part, the Development Agreement obligates the Township to:

> assist Gotion, to the extent legally permissible, in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project and conduct business to support the Project, for which the failure to obtain such licenses, permits, or other governmental authorizations is reasonably likely to materially and adversely affect the Project (financially or otherwise), or impair Gotion's ability to perform its obligations under this Agreement.

(*Id.* § 4.c.) The Development Agreement provides that "any material failure by either Party to comply with any of the terms, covenants and conditions" of the Agreement constitutes an "event of default." (*Id.* § 7.b.)

Should an event of default occur, the Development Agreement provides that "the non-breaching Party may immediately, after the expiration of any applicable Cure Period without a cure . . . exercise an[y] other available remedy at law or equity." (*Id.* § 7.g.a.) The "Cure Period" is defined as the sixty-day period after the non-breaching party provides written notice of the breach to the breaching party. (*Id.*).

**The Township approves Resolution No. 1012023 to extend water to the Project**

Water infrastructure is a critical part of the Project's success, particularly in the Project's nascent stages, with a possible need of up to 715,000 gallons per day in the initial phases of operation. (**Ex. 1**, C. Thelen Decl. ¶ 24.) Because of the sizeable water needs of the Project, Gotion must obtain water from a source with sufficient capacity to effectively service the Project. (*Id.* ¶ 25.) After diligently reviewing its options for extending water to the Project, Gotion determined that the most feasible source is obtaining water from the City of Big Rapids. (*Id.* ¶ 26.)

Pursuant to long-term agreements with the City, the Township has limited review-and-approval rights over proposed extensions of the City's water system. Specifically, in May 2000, the Township adopted Ordinance No. 16-52000, which granted the City the right to construct, install, maintain, operate, repair, and replace the City's water system along and under the public rights-of-way in the Township for a period of thirty years. (**Ex. 4** to Compl., Ord. No. 16-52000)

6

Under Ordinance No. 16-52000, while proposed extensions of the City's water system through the Township are "subject to the review and approval of the Township," the scope of that review and approval process is strictly "limited to the impact such extensions may have on the orderly development of the Township consistent with the Township Master Plan." (*Id.* § 9.)

After the adoption of Ordinance No. 16-52000, the Township and the City executed the Retail Water Service Agreement ("Water Agreement") in June and July 2000, which further defines the City's right to construct, install, maintain, operate, repair, and replace the various components of the water system in the Township. (**Ex. 5** to Compl., Water Agmt.) The Water Agreement provides that individuals and businesses that wish to connect to the City's water system must submit a request for connection to the Township, which in turn submits service requests to the City. Under the terms of the Water Agreement, while the Township has the initial obligation to review plans and specifications to determine whether they are consistent with the Township's Master Plan, ultimately, "[t]he City shall have the *sole authority* for accepting or rejecting the request of the Township for service." (*Id.* § 7.)

In accordance with Ordinance 16-52000, Gotion submitted to the Township two sets of alternative plans and specifications to extend the City's water system to service the Project. (**Ex. 1**, C. Thelen Decl. ¶ 30.) Option A would involve extending a new water main from the City's current system to Gotion's property and constructing a water tower. (**Ex. 6** to Compl., Option A Plans & Specs.) Option B would involve constructing a new city well and water plant directly on or near Gotion's property. (**Ex. 7** to Compl., Option B Plans & Specs.)

After reviewing both Options proposed by Gotion, the Mayor of Big Rapids, Fred Guenther, sent a letter to the Township "seeking Green Charter Township's approval of the plans and specifications for both options A and B so as not to require the City to come back later if one

or the other option proves unfeasible." (Compl. ¶ 61.) In that letter, the Mayor noted that "In the City's view, neither option will have any adverse impact on future development in the Township inconsistent with the Township's Master Plan. Therefore, based on the limited scope of the Township's review, it is our hope that this review and approval process will not be controversial." (*Id.* ¶ 62.)

Honoring its obligation under the Development Agreement to obtain the necessary governmental authority necessary to advance the Project, the Township unanimously adopted Resolution No. 1012023 on October 10, 2023, approving Gotion's plans and specifications (the "Water Extension Resolution"). (**Ex. 8** to Compl., Water Ext. Res.) In the Water Extension Resolution, the Township acknowledged the limitations of its review and approval for proposed water extensions. Specifically, the Township noted that its review was limited to evaluating "the impact, if any, such extension may have on the orderly development of the Township consistent with the Township Master Plan[.]" (*Id.*) The Resolution further stated that the "Township Board hereby approves both sets of plans and specifications for the proposed extensions of the Water System as shown in Attachments A and B hereto, with the understanding that the City may select, at its sole discretion, the option that is most feasible and convenient based on the circumstances and results of its efforts to obtain other required outside approvals." (*Id.*) The Water Extension Resolution further noted that, "[t]he Township Board, in approving the plans and specifications finds and determines that neither of the two alternative proposed extensions of the Water System will adversely impact the orderly development of the Township consistent with the Township's Master Plan." (*Id.*)

**Township Board turnover and rescission of the Water Extension Resolution**

Efforts to recall members of the Township Board for their support for the Project began in late 2022. (Compl. ¶ 67.) As a result of the recall efforts, Trustee James Peek resigned on June 13,

2023, and Trustee Gary Todd resigned on September 13, 2023. Peek was replaced by Sara Rasmussen and Todd was replaced by Daniel Hoeh. (*Id.* ¶ 68.) On November 7, 2023, the Township held an election to recall the other five members of the Board. (*Id.* ¶ 69.) All five remaining members, including the supervisor, two trustees, the clerk, and the treasurer, were recalled. The five new members of the Board are Jason Kruse (Supervisor), Jeff Thorne (Trustee), Kelly Cushway (Trustee), Robert Henderson (Treasurer), and Corri Riebow (Clerk). (*Id.* ¶ 70.)

Just one week later, at their first meeting on November 14, 2023, the Township adopted Resolution No. 2023.01 (the "Resolution to Rescind") in a 4-to-3 vote, rescinding the Water Extension Resolution, which had been unanimously adopted only a month prior. (**Ex. 9** to Compl., Res. to Rescind.) In breaking the tie on the 3-3 vote to adopt the Resolution to Rescind, the Township Supervisor stated that he would "flip a coin" and go with a vote to rescind the Water Extension Resolution. (Compl. ¶ 80.) The Township justified its abrupt reversal on the grounds that "the current elected board" lacked "sufficient time and legal expertise to review the [Water Extension] Resolution and agreement terms." (**Ex. 9** to Compl., Res. to Rescind) The Township also claimed that "the current board" had not been in "contact with the City to fully understand the details and or scope of the project," and that it had "NOT reviewed the two alternative sets of plans and specifications for the proposed extension of the Water System." (*Id.*) The Township failed to cite any authority to support the Resolution to Rescind. (*Id.*) At that same meeting, the Township also approved a motion to "continue investigating matters concerning Gotion." (Compl. ¶ 85.)

All five members of the current Township Board who replaced a previous member of the Board in the recall election have publicly expressed anti-Gotion sentiment. Corri Riebow, the Township Clerk, speaking on the new Board's stance on Gotion, reportedly shared with the media that "[w]e just plan on making it as difficult as possible for them to continue their process." (*Id.* ¶

72.) She added that Gotion was "not their friend." Supervisor Jason Kruse, the founder and former president of the Mecosta Environmental & Security Alliance ("MESA"), an organization that "exists to fund the legal efforts to stop the construction of" the Project, told reporters shortly after assuming the role of Board Supervisor that Gotion "can be stopped, 100 percent," and that his political office could be used to undermine Gotion's efforts: "There's a lot of holes that can be pulled apart and we can dissect this project." (*Id.* ¶¶ 74-75.) Elsewhere, Supervisor Kruse explained the straightforward purpose of his candidacy: "I'm elected to be a no-Gotion guy." (*Id.* ¶ 76.) Trustee Jeff Thorne told media that he ran for the Board to "be in th[e] fight" against the Project: "I wouldn't be involved in this if I thought it was fruitless, if [the Project] was a done deal. There are a lot of things that can be done." (*Id.* ¶ 77.) And Trustee Kelly Cushway bluntly told reporters, "Nothing would make me happier than for Gotion to pull out." (*Id.* ¶ 78.)

In furtherance of their stated plans to stop the Project, at the Township's next meeting—a special meeting held on Sunday, December 3, 2023—the Township Board voted 5-to-2 to rescind the Support Resolution. (**Ex. 10** to Compl., Dec. 3 Mtg. Mins.) In the Support Resolution adopted less than a year earlier, the Township had expressed its unanimous support for Gotion and the Project and declared the Township would "assist[] Gotion Inc in their efforts to join our community." (**Ex. 2**  to Compl., Supp. Res.)

**Gotion notifies the Township of its breaches of the Development Agreement**

On December 8, 2023, Gotion, through its counsel, notified the Township that it was in material breach of the Development Agreement. (**Ex. 11** to Compl., Breach Ltr.) Gotion requested that the Township cure its breaches by rescinding the recently adopted resolutions and reinstating the Water Extension Resolution and the Support Resolution. (*Id.*) Pursuant to the Development Agreement, the Township had 60 days from the date of the letter to cure as requested. (**Ex. 1** to Compl., Dev. Agmt. at § 7.g.a.)

On February 8, 2024, the Township sent a letter refusing to cure its breach. It denied that any support existed for an alleged breach of the Development Agreement. (**Ex. 12** to Compl., Twp. Res. Ltr.) Though the letter "presumed that the Development Agreement is a binding and enforceable agreement on the parties," it added that "that presumption should not be construed as an admission by the Township that the Development Agreement is binding and enforceable." (*Id.*)

The Township presented four arguments why it believed the rescissions of the Water Extension and Support Resolutions did not constitute a breach of the Development Agreement. (*Id.*) First, it argued that the rescission of the Support Resolution did not affect the Project because the Support Resolution only "contained blanket *opinions*," and did not propose any particular action for the Project. (*Id.*) Second, the Township argued that the Project's need for water was not presently necessary because Gotion lacked various permits, governmental approvals, and "a finalized public project design." (*Id.*) Third, it claimed that Gotion's December 8 letter indicated that Gotion believed the Township had no authority to approve expansions of the City's water system, and thus, should Gotion be correct, "Gotion should recognize that Township action is unnecessary for Proposed Project approvals and that the Township could not materially or adversely impact the Proposed Project." (*Id.*) Finally, the Township cited a December 6, 2023 article in the Big Rapids Pioneer that reported on "a very good meeting" between the Big Rapids City Manager and Township Supervisor Kruse, during which they discussed, among other topics, Gotion's proposed extensions to the water system. (*Id.*)

**The Township continues to breach the Development Agreement**

Even after Gotion provided notice of the Township's breaches of the Development Agreement, the Township continues to take actions to intentionally interfere with Gotion's project in clear violation of the Development Agreement. (Compl. ¶ 103.) For instance, shortly before this lawsuit was filed, the Township held yet another series of special meetings to initiate a proposed

ordinance to create a planning commission, despite the fact that Township citizens already voted down a referendum to create a planning commission in the November 2023 election. (*Id.* ¶ 104.) The Township Board indicated that it intends to appoint a 7-person planning commission to create township zoning, rezone Gotion's property, and reject all building permits. (*Id.* ¶ 105.) On March 7, 2024, the Township served a Notice of Preliminary and Permanent Injunction on the Mecosta County Planning Commission. (**Ex. 14** to Compl., Not. of Inj.) In the Notice, the Township threatened a lawsuit against the County if the County did not stop processing Gotion's site plan and special use permit application that was submitted to the County for review on March 1, 2024 even though the ordinance to establish a planning commission will not take effect until April 27, 2024 at the earliest per Michigan's Zoning Enabling Act, and the Township does not currently have a zoning ordinance in place that would confer zoning jurisdiction on the Township. (*Id.*) The Mecosta County Planning Commission is currently the sole body with zoning jurisdiction with respect to Gotion's site plan and special use permit application.

## ARGUMENT

Under Fed. R. Civ. P. 65 Gotion requests that the Court issue a preliminary injunction directing the Township to comply with its obligations under the Development Agreement. These obligations include, but are not limited to, rescinding Resolution to Rescind and reinstating the Water Extension Resolution and Support Resolution.

To determine whether to grant a preliminary injunction under Fed. R. Civ. P. 65, the Sixth Circuit applies a four-factor test: (1) whether the plaintiff is likely to prevail on the merits of its claim(s); (2) whether the plaintiff will suffer irreparable harm in the absence of an injunction; (3) whether granting injunction will cause substantial harm to the other party; and (4) whether the public interest supports the grant of an injunction. *Six Clinics Holding Corp., II v. Cafcomp Sys.,*

12

*Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). All four factors weigh strongly in Gotion's favor. Accordingly, the Court should issue a preliminary injunction directing the Township to comply with its obligations under the Development Agreement.

## I.    Gotion is likely to succeed on the merits of its breach of contract claim.

By rescinding its support for Gotion and its approval of Gotion's plans and specifications to connect the City's water system to the Gotion facilities, the Township has breached the Development Agreement and is acting beyond the scope of its lawful authority. The breaches have stalled necessary progress on the Project and threaten to undermine it entirely.

Federal courts sitting in diversity apply state law to determine whether a party seeking preliminary injunction can demonstrate a substantial likelihood of success on the merits. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). The parties' contractual choice of forum and governing law determines which state's law the Court will apply. *Id.* The Development Agreement provides that Michigan is the parties' chosen forum. (**Ex. 1** to Compl., Dev. Agmt. § 14.) The elements of a breach of contract claim under Michigan law are: (1) the existence of a valid contract between the parties; (2) the requirement of performance of a certain action under the contract; (3) the occurrence of a breach; and (4) injury to the non-breaching party as a result of the breach. *Synthes Spine Co., L.P. v. Calvert*, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003) (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Here, all the elements of a breach of contract claim under Michigan law are met. First, the Development Agreement constitutes a valid and binding contract with the requirement of performance of certain actions by the Township. In relevant part, Section 4.c of the Development Agreement obligates the Township to assist Gotion in obtaining or causing to obtain governmental

13

authorizations necessary to advance the Project, where the failure to obtain such authorizations is reasonably likely to materially and adversely affect the Project or impair Gotion's ability to perform its obligations under this Agreement. (**Ex. 1** to Compl., Dev. Agmt. § 4.c.)

Second, the Township breached Section 4.c of the Development Agreement by rescinding the Water Extension Resolution and the Support Resolution. Access to water is necessary to advance the Project, and failure to obtain it is certain to materially and adversely affect the Project. Moreover, withholding access to water could make Gotion unable to perform its obligations under the Development Agreement. Under the Township's Ordinance No. 16-52000, Gotion cannot connect its Project to the City's water system without the Township's approval of the plans and specifications. The Township initially approved the connection pursuant to the scope of its authority under the Water Extension Resolution, but by rescinding the Water Extension Resolution and the Support Resolution, the Township has failed to assist Gotion in obtaining or causing to obtain the governmental authorization only the Township can grant in breach of Section 4.c of the Development Agreement. The Development Agreement provides that "any material failure by either Party to comply with any of the terms, covenants and conditions" of the Agreement constitutes an "event of default." (*Id.* § 7.b.) *See also Jacobs v. Detroit Auto. Inter-Ins. Exch.*, 107 Mich. App. 424, 431, 309 N.W.2d 627 (1981) ("A cause of action for breach of contract accrues when a contracting party fails to do what he is obligated to do under the contract."). Accordingly, the Township's rescission of these resolutions constitutes a material failure to comply with Section 4.c. of the Development Agreement and is thus a breach under Section 7.b.

Notably, in its February 8, 2024 response letter, the Township did not dispute that the rescission of these resolutions was contrary to its obligations in the Development Agreement.  (**Ex.**

12 to Compl., Twp. Resp. Ltr.) Rather, the Township provided four supposed excuses for its obvious breaches. Each of those excuses lacks merit.

First, the Township's claim that the Support Resolution only "contained blanket **_opinions_**," and did not propose any particular action for the Project is factually wrong. (*Id.*) The Support Resolution states that the Township "will make every effort to work in the interests of our constituents and community by assisting Gotion Inc. in their efforts to join our community." (**Ex. 2** to Compl., Supp. Res.) This is consistent with the Township's obligations under the Development Agreement to "assist Gotion in obtaining or causing to obtain governmental authorizations necessary to advance the Project." (**Ex. 1 to Compl.**, Dev. Agmt. § 4.c.) By rescinding this Resolution, the Township is acting inconsistently with its parallel obligation under the Development Agreement.

Second, the Township's claim that its actions do not materially affect the Project "at this time" because there is currently no need for expansion of the water system is wrong on two accounts. (*See* **Ex. 11** to Compl., Twp. Resp. Ltr.) The Development Agreement does not require that the Township's failure to comply with its obligations must materially and adversely affect the Project "at this time." Rather, the Development Agreement states that if the Township's failure to assist Gotion in obtaining authorizations necessary to advance the Project is "*reasonably likely* to materially and adversely affect the Project (financially or otherwise)," that is a default. (**Ex. 1** to Compl., Dev. Agmt. § 4.c. (emphasis added).) And, in any event, as explained in Section II below, there is no question that the Township's actions have a material and adverse effect on the Project at this time by preventing Gotion from moving forward with its construction plans and delaying other approvals needed to meet the construction deadlines.

Third, the Township's claim that, based on statements in Gotion's December 8 letter, "Gotion should recognize that Township action is unnecessary for Proposed Project approvals and that the Township could not materially or adversely impact the Proposed Project," reads Gotion's statements out of context. (*See* **Ex. 12** to Compl., Twp. Resp. Ltr.) As the Township itself has recognized, the City has *sole authority* to make the ultimate decision to accept or reject requests for water extensions. (**Ex. 5** to Compl. Water Agmt., § 7.) But the Water Agreement between the City and Township makes clear that the Township has the initial obligation and limited authority to review plans and specifications to determine whether they are consistent with the Township's Master Plan before submitting the request to the City. (*Id.*)  By rescinding the Water Extension Resolution, the Township has handcuffed Gotion and the City's ability to move forward with the proposed water extension.

Finally, the Township's reference to the "very good meeting" between Supervisor Kruse and the City Mayor does nothing to remedy the Township's breaches of the Development Agreement. (Compl. ¶ 99.) Without the Township's initial approval of Gotion's plans and specifications, the City cannot move forward with approving and constructing the proposed water extension. Thus, none of the Township's "excuses" for its breaches have merit.

The Township's March 7, 2024 Notice to Mecosta County constitutes yet another breach of the Development Agreement, as it is a blatant refusal to "assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project." (*See* **Ex. 14** to Compl., Not. of Inj.) Indeed, the Township is attempting to compel the County to violate its obligations under the Zoning Enabling Act by refusing to process Gotion's site plan and special use permit application in furtherance of its goal of blocking Gotion's project.

As a result of the Township's continuing refusal to abide by its obligations under the Development Agreement, Gotion will suffer irreparable harm. The injury that Gotion will suffer as a result of the Township's actions to date and its continuing refusal to comply with the Development Agreement will be discussed in greater length in the next section.

That Gotion will succeed on the merits of its breach of contract claim against the Township strongly argues in favor of the issuance of a preliminary injunction.

## II.   Gotion will suffer irreparable harm if the Court does not issue a preliminary injunction.

The Sixth Circuit has long understood that "[t]he object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (quoting *Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur*, 53 F. 98, 101 (6th Cir. 1892)). Gotion has already contributed significant time and effort to realize the Project. To prevent the Township's obstructionist conduct from causing irreparable harm and thereby undoing a project already millions of dollars and years in the making, this Court should maintain the status quo until it has had an opportunity to evaluate the matter.

A party's harm is "irreparable" when it cannot be fully compensated by money damages. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002). An injury is also irreparable if the harm is difficult to calculate. *RECO Equip., Inc. v. Wilson*, No. 20-4312, 2021 WL 5013816, at *4 (6th Cir. Oct. 28, 2021) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)); *Cherry Ridge, LLC v. Canton Charter Tp.*, No. 12-CV-15126, 2013 WL 686491, at *4 (E.D. Mich. Feb. 26, 2013) ("[Where] problems are difficult to quantify and evaluate as to money damages . . . their cumulative effect rises to the level of irreparable harm."). This includes injuries to future lost profits and business opportunities. *Warren v. City of Athens*, 411

17

F.3d 697 (6th Cir. 2005) (affirming that "future lost profits are much harder to quantify" when determining the irreparability of harm), *NACCO Materials Handling Gp. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x. 929, 943 (6th Cir. 2007) ("Loss of goodwill and business profits signify irreparable harm."). Additionally, irreparable harm must also be "imminent" to justify the "need to grant relief *now* as opposed to at the end of the lawsuit. *D.T. v. Summner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). Finally, a plaintiff seeking injunctive relief must show that irreparable injury is not only possible, but that it is "likely" in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Gotion faces imminent and likely risk of harm. As discussed above, access to water is a critical component of the Project's success and is an absolute necessity to its continuing viability. The Township revoked its approval for access to the water system four months ago in November 2023 and has yet to provide any indication of what Gotion must do in order to re-obtain the Township's approval. Given the evident, uncompromising hostility of a majority of the Township's Board members towards Gotion, it is not only possible but likely that the Township will *never* voluntarily abide by its obligations under the Development Agreement moving forward. The Township's decision to rescind the Support Resolution, in which the Township declared only a year ago that it "will make every effort to work in the interests of our constituents and community by assisting Gotion Inc. in their efforts to join our community" demonstrates that the Township Board's stance towards Gotion has become decidedly hostile. (**Ex. 2** to Compl., Supp. Res.)

Indeed, in light of several of the Board members' past public statements, Gotion feared that the Township's rescissions of the Water Extension Resolution and Support Resolution were only the opening salvo. Subsequent events have demonstrated that those concerns were justified. Shortly before this lawsuit was filed, the Township held yet another series of special meetings to

adopt an ordinance to create a planning commission, despite the fact that Township citizens already voted down a referendum to create a planning commission in the November 2023 election. (**Ex. 13** to Compl., Special Mtg. Not.) At the first special meeting, the Township Board indicated that it intends to appoint a 7-person planning commission to create township zoning, rezone Gotion's property, and reject all building permits. (**Ex.** 1, C. Thelen Decl. ¶ 41.) Then, on March 7, 2024, the Township served a Notice of Preliminary and Permanent Injunction on the Mecosta County Planning Commission, in which the Township threatened a lawsuit against the County if it did not stop processing Gotion's site plan and special use permit application that was submitted to the County on March 1, 2024. (**Ex. 14** to Compl., Not. of Inj.) The Township's March 7, 2024 Notice constitutes yet another breach of the Development Agreement, as it is a blatant refusal to "assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project" (**Ex. 1 to** Compl., Dev. Agmt., § 4.c.) and creates yet another risk of risk of imminent and irreparable harm to the Project's ability to move forward.

Further, Gotion faces risk of imminent harm because the delay of one critical aspect of the Project will inevitably delay other, equally critical aspects of the Project. In cases of large projects requiring complicated and coordinated construction processes, courts have routinely recognized a "domino effect," whereby the hinderance of one part of a larger project triggers subsequent delays, enormously compounding costs and often indefinitely elongating the work's timetable. *Del. River Joint Toll Bridge Comm'n v. Oleksiak*, No. 19-2978, 2019 WL 3545851, at *10 (E.D. Penn. Aug. 2, 2019) (granting preliminary injunction because "[u]ntimeliness in one small part of this enormous project would result in a domino effect on the timeliness of all other areas of the project."); *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cnty. Fla*, No. 3:16-CV-274, 2016 WL 318895, *4 (M.D. Fla. June 8, 2016) (finding irreparable injury because

19

"[e]ach disruption of the Project's orderly, linear workflow would force [the plaintiff] to incur such added construction costs that could not be recouped and constitute irreparable injury"); *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.14 Acres*, Nos. 17-715 17-720, 17-722, 17-723, 17-1725, 2017 WL 3624250, *8 (E.D. Penn. Aug. 23. 2017); *Constit. Pipeline Co., LLC v. A Permanent Easement for 0.42 Acres and Temporary Easements for 0.46 Acres, In Schoharie Cnty., NY*, No. 1:14-CV-2057, *4 (N.D.N.Y. Apr. 17, 2015).

Here, delaying access to water would cause a devasting domino effect. The development of water infrastructure is a large and complicated undertaking that requires the cooperation of many governmental and private entities, often in a sequential manner. Currently, Gotion estimates that construction of the water infrastructure will take three to six months for design and an additional 18-24 months to construct the water tower. (**Ex. 1**, C. Thelen Decl. ¶ 28.) The Township's approval is a necessary prerequisite to begin that arduous process.

Because of the sequence and timing of design and construction, Gotion's inability to immediately begin moving forward with designing and constructing the water infrastructure will have serious ramifications for Gotion's ability to meet its construction obligations and deadlines under the Development Agreement and Grant Agreement. The Development Agreement obligates Gotion to "complete construction of those improvements identified in Exhibit B, as applicable, pursuant to the terms of the SSRP Agreement and the CIP Agreement." (**Ex. 1** to Compl., Dev. Agmt § 1.) Exhibit B to the Development Agreement sets forth the following construction timeline:

**EXHIBIT B**

**DEVELOPMENT ACTIVITIES**

| ACTIVITY | ESTIMATED COST | TIMELINE |
|---|---|---|
| Sanitary Sewer, Lift Station, Pump Station Upgrade (Green Township) | $3,430,000 | 4Q23 design; 2-4Q24 construct |
| Water Main, Elevated Storage Tank, Valves, and Hydrants (City of Big Rapids) | $13,019,500 | 4Q23 design; 3Q24 construction |
| Road Improvements, Turn Lanes, Bridge Widening, and Traffic Lights (RPI, Green Charter Township, Mecosta County) | $8,310,000 | 4Q23 design; 3Q24 construction |
| Other Infrastructure, infrastructure and Land Acquisition Admin Fee (RPI, Green Charter Township, City of Big Rapids, Mecosta County | $545,000 | 2Q23 closing; 4Q23 design; 3Q24 construction |
| INFRASTRUCTURE TOTAL | $25,305,000 | |
| | | |
| Property Acquisition Cost (Gotion) | $24,695,000 | 2Q23 closing; 3Q23 reimbursement |
| TOTAL | $50,000,000 | |

In other words, to have a timely commissioning of the facility, the Development Agreement dictates that design must begin in the fourth quarter of 2023 and construction must begin in the third quarter of 2024. However, even if the water extension plans were approved by the Township today, Gotion would not be able to complete the design until the third quarter of 2024, and would not be able to construct and commission the water tower until the second quarter of 2026. (**Ex. 1**, C. Thelen Decl. ¶¶ 36-37.) Thus, Gotion is already behind in design and construction by nearly six months due to the actions of the Township.  (*Id.* ¶ 35.)

Finally, looming over the Township's prolonged refusal to perform under the Development Agreement is the risk that its intransigence will trigger a breach of the Grant Agreement between Gotion and the MSF and MEDC. The Grant Agreement provides that the Township's failure to substantially perform obligations regarding the improvement of public infrastructure under the separate agreement between Gotion and the Township could constitute breach of the Grant Agreement. (**Ex. 3** to Compl., Grant Agmt. § 5.1(h); *see also id.* at Ex. A, ¶ (q).). In the event of

21

the Grant Agreement, the MSF may, among other remedies, suspend grant disbursements, terminate the Agreement, or place a freeze on Project funds. (*Id.* §§ 5.2, 5.3.) The longer the Township is permitted to persist in breaching the Development Agreement, the greater risk Gotion runs, at no fault of its own, of a breakdown in a relationship between itself and the state agencies upon whose funding the Project relies. There is therefore a pressing urgency now to ensure that the Township remains in compliance with its obligations under the Development Agreement.

Gotion's harm is irreparable because it is not fully compensable by money damages. First, Gotion will incur substantial harm—potentially in the tens of millions of dollars—during the pendency of this case if the Township continues to withhold approval. (**Ex.** 1, C. Thelen Decl. ¶ 38.) Given the substantial monetary amounts that Gotion has already invested and that are at stake with the Project in the future, it is unconceivable that whatever damages could be calculated monetarily would be curable at the end of trial because Gotion's damages would far exceed what the Township would be able to pay. For instance, Gotion invested over $24,000,000 into the Project by way of real estate acquisition costs and other related fees. (*Id.* ¶ 14.)  Since October 2023 (after the Development Agreement was executed), Gotion has invested nearly $500,000 in additional costs for management and marketing fees, among other things. (*Id.* ¶ 15.)  Further, Gotion has already committed $56,000,000 for employee salaries and infrastructure costs, and anticipates committing an additional $7,300,000 in architectural and engineering design contract commitments, among other things in March 2024. (*Id.* ¶ 16.)

The Township cannot afford to compensate Gotion for those costs. In such situations, federal courts have routinely found irreparable harm justifying injunctive relief. *See, e.g.*, *Philip Morris USA*, *Inc v. Scott*, 561 U.S. 1301, 1304 (2010) ("If expenditures cannot be recouped, the resulting loss may be irreparable.") (Scalia, J.); *N. Border Pipeline Co. v. 64.111 Acres*, 125 F.

Supp. 2d 299, 301 (N.D. Ill. 2000) (holding construction delays would cause irreparable harm because projected increase in construction costs could not be recovered from defendants); *Perryville Gas Storage, LLC, v. 40 Acres*, No. 3:11-cv-1635, 2011 WL 4943318, at *3 (W.D. La. Oct. 17, 2011) (granting injunctive relief on the ground that increased costs caused by delay of possession "would be unrecoverable"); *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111-15 (7th Cir. 1983) (a defendant's inability to pay money damages can constitute irreparable harm "depends on two factors—the [defendant's] resources and the potential magnitude of eventual damages"); *Hoxworth v Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 206 (3d Cir. 1990) ("[T]he unsatisfiability of a money judgment can constitute irreparable injury"); *Wal-Mart Stores, Inc. v. Cty. of Clark*, 125 F. Supp. 2d 420, 429 (D. Nev. 1999) (granting a preliminary injunction against the county because although the plaintiff's damages were largely monetary, it "would be unlikely to recover potential damages of one billion dollars from Clark County").

Moreover, the harm in this matter is irreparable because it involves the prevention of the use and enjoyment of real property. Gotion has already purchased 270 acres—most of which is zoned for industrial use—for the Project, but the Township's refusal to grant approval for access to its water system and its recent threats to take over the zoning authority and deny Gotion's permits makes Gotion's proposed use for the site impossible. Federal courts have recognized that real property has unique characteristics and that the risk of irreparable harm significantly increases where a party prevents a property owner from the lawful use of that property. *See Golf Vill. N., LLC v. City of Powell*, 333 F. Supp. 3d 769, 780–81 (S.D. Ohio Aug. 9, 2018) (affirming that a government's interference with "an interest in real property constitutes irreparable harm"); *Parkview Homes, Inc. v. City of Rockwood*, No. 05-CV-72708, 2005 WL 2468433, at *6 (E.D. Mich. Oct. 6, 2005) (acknowledging that irreparable harm exists where a party is "unable to use

its property in its preferred manner"); *Gordon v. New Engl. Cent. R.R.*, No. 2:17–cv–00154, 2017 WL 6327105, *12 (D. Vt. Dec. 8, 2017) (acknowledging that a "deni[al of] all effective use of the property, sustained irreparable physical damage to it, or [the loss of] the property's entire fair market value" could constitute irreparable harm); *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214 (E.D.N.Y. 2013) ("Unauthorized interference with a real property interest constitutes irreparable harm as a matter of law . . . given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute.")

Gotion will suffer imminent and irreparable harm from the Township's unjustified rescission of the resolutions and corresponding refusal to comply with its obligations under the Development Agreement. Given the staunchly anti-Gotion stance that several of the Township Board's newest members have taken, along with its rescission of the Support Resolution, this is plainly the first of many such unjustifiable breaches to come. To discourage such harm and to cure the harm that has already occurred, this Court should issue a preliminary injunction to ensure the Township's current and continued compliance with the Development Agreement.

## III.   Both the balance of harms and the public interest weigh strongly in favor of a preliminary injunction.

The balance of harm weighs substantially in Gotion's favor because the Township has failed to identify *any* harm or hardship it will suffer should it be required to comply with its obligations under the Development Agreement, including approving Gotion's plans and specifications to connect to the Township's water system. In fact, in the Water Extension Resolution, the Township unanimously determined that "neither of the two alternative proposed extensions of the Water System will adversely impact the orderly development of the Township consistent with the Township's Master Plan." (**Ex. 8** to Compl., Water Ext. Res.) Thus, the

Township has already determined that extension of the Water System will not harm the Township or its citizens.

By contrast, the harm to Gotion is, as discussed above, imminent and irreparable. After years of preparation and planning and spending millions of dollars in preparation for the Project, the entire endeavor is now at risk because of the unjustified and obstructionist conduct of the Township. If Gotion does not obtain injunctive relief, it will delay access to a critical need of the Project, immediately endanger the Project's funding with state agencies, and only encourage the Township to engage in further breaches of the Development Agreement.

Considerations of the public interest also strongly favor the issuance of a preliminary injunction. "The public interest is best served by requiring parties to a contract to abide by their agreement." *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994). Here, the Township should not be able to disregard its contractual duties on a whim.

Furthermore, the harm to the West Michigan community is significant. Notably, Mecosta County, the City of Big Rapids, and the Mecosta County Economic Development Corporation strongly support the Project. (**Ex.** 1, C. Thelen Decl. ¶ 17.) Indeed, Gotion intends to invest $2.36 billion into the Project and employ 2,350 individuals in jobs that include health insurance and paid vacation and pay almost 150% of the region's current average wage. (*Id.* ¶¶ 7-9.) The Project is expected to bring numerous indirect benefits to West Michigan, such as significant improvements to local infrastructure and the creation of ancillary businesses to support a growing and more prosperous population. (*Id.* ¶ 10.) Overall, the Project is predicted to generate nearly $12 billion in new income for those who are directly and indirectly employed as a result of the Project over the next 20 years. (*Id.* ¶ 12.)

Finally, the Township's breach of the Development Agreement has ramifications for state and national interests in the pursuit of establishing a diversified, domestic, and internationally competitive supply chain of alternative technology. The hinderance of the Project prevents the realization of the will of the entire state of Michigan, which continues to hold ambitious goals of obtaining 100% carbon neutrality by 2050. This state's commitment to these goals was recently reaffirmed in November 2023 when the state legislature passed a series of landmark clean energy laws. The state's endorsement of these initiatives has spurred $20 billion in investments in various energy-related sectors within one year of the passage of the IRA and has secured for Michigan 14 projects in clean energy, battery, and EV manufacturing. Allowing Gotion's Project to be obstructed by a vocal minority of dissenters at this time will discourage further progress on this front. Nationally, Gotion is among the companies attempting to provide the impetus behind the much-needed overhaul to the domestic production of EVs and EV batteries, and hindering its forward moment jeopardizes national economic policy aims.

## CONCLUSION

For the reasons above, a preliminary injunction should be entered against the Township.

Respectfully submitted,

WARNER NORCROSS + JUDD, LLP

Dated: March 15, 2024

*/s/ Ashley G. Chrysler*
Daniel P. Ettinger (P53895)
Ashley G. Chrysler (P80263)
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000

*Attorneys for Plaintiff Gotion, Inc.*

207295.212954 #30219818-2

26