UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| GOTION, INC., | No. 1:24-cv-00275 |
| Plaintiff, | Hon. District Judge Jane M. Beckering |
| v. | Hon. Magistrate Judge Phillip J. Green |
| GREEN CHARTER TOWNSHIP,<br>a Michigan general law township, | |
| Defendant. | |

_____/

## DEFENDANT GREEN CHARTER TOWNSHIP'S ANSWER TO PLAINTIFF

## GOTION'S COMPLAINT

Green Charter Township ("**Township**"), through its counsel, Bauckham, Thall, Seeber, Kaufman & Koches, P.C. for its Answer to Plaintiff Gotion, Inc, ("**Gotion**") complaint states as follows:

## INTRODUCTION

1.      This case presents a simple breach of contract claim arising from the unlawful actions of the new members of the Township, the majority of whom are motivated by clear anti-Gotion animus.

**ANSWER**: The Township denies that it breached any contract and that any actions of the new Township Board members were unlawful.

2.      In August 2023, Gotion and the Township entered into a binding contract (the "**Development Agreement**"), under which, in relevant part, the Township agreed to assist Gotion in obtaining the necessary governmental authorizations to advance Gotion's electric vehicle

battery component manufacturing project, which includes authorizations to construct water infrastructure for the project.

> **ANSWER**: The Township admits that former Township Supervisor, Jim Chapman, signed the Development Agreement, but denies that it is an enforceable agreement.

3.      Under a long-standing agreement between the Township and the City of Big Rapids, any proposed extension of the City's water system through the Township is subject to the Township's review and approval.

> **ANSWER**: The Township admits that this language is contained in the Township's franchise agreement with the City of Big Rapids.

4.      In October 2023, the Township complied with its contractual obligations by adopting a resolution approving Gotion's plans to connect the City's water system to Gotion's project.

> **ANSWER**: The Township admits that it adopted a resolution approving Gotion's plans to connect the City's water system to Gotion's project, but denies that the Development Agreement can bind future Township Boards' legislative authority from revoking a franchise agreement

5.      Just one month later, the Township abruptly reneged on its contractual obligations by rescinding the resolution. The only thing that changed between October and November was the composition of the Township's Board, most of whose members are now ardently opposed to Gotion's project. The Board gave no justifiable reason for its sudden refusal to honor its contractual obligations.

> **ANSWER**: The Township admits that the Township rescinded the resolution, but denies that the recission is a violation of any contractual obligation.

2

6.      Since that time, the Township has continued to engage in actions that violate the Development Agreement in an admitted attempt to block Gotion's project.

**ANSWER**: The Township denies the allegations contained in paragraph 6.

7.      To prevent the Township's sudden recalcitrance from unraveling an endeavor already years and millions of dollars in the making, this Court should order the Township to comply with its obligations under the parties' agreement by, among other things, reinstating the resolution to approve the connection of the City's water systems to Gotion's project.

**ANSWER**: the Township denies the allegations contained in paragraph 7.

## PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff Gotion, Inc., is a California corporation with its registered office located in the State of California at 48660 Kato Road, Fremont, California 94538.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 8, and leaves Gotion to their proofs.

9.      Defendant Green Charter Township is a Michigan general law township existing under the laws of the State of Michigan with its principal office at 21431 Northland Drive, Paris, Michigan 49338.

**ANSWER**: The Township admits the allegations contained in paragraph 9.

10.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

**ANSWER**: The Township admits that this case involves a dispute between citizens of different states. The Township lacks knowledge or information sufficient to form a belief

3

about the truth regarding the actual amount in controversy, and leaves Gotion to their proofs.

11.     Moreover, the Development Agreement provides that jurisdiction is proper in federal courts in Michigan. *See* **Exhibit 1**, Dev. Agmt. § 14.

**ANSWER**: The Township admits that the Development Agreement provides for jurisdiction in Michigan federal courts; however, the Township denies the validity and effectiveness of the Development Agreement and reserves the right to challenge jurisdiction.

12.     This Court is a proper venue for this action under 28 U.S.C. § 1391(b) because Defendant is located in this district.

**ANSWER**: The Township admits the allegations contained in Paragraph 12, assuming that all claims are ripe and that Gotion has standing to bring the claims; however, the Township reserves the right to challenge ripeness of the claims and standing.

<u>**GENERAL ALLEGATIONS**</u>

**Gotion and the Project**

13.     Incorporated in California in 2014, Gotion is a subsidiary of Gotion High-Tech Co., which is one of the world's largest electric vehicle ("**EV**") battery manufacturers and has been named on Bloomberg's list of top 25 new energy producers.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 14, and leaves Gotion to their proofs.

14.    Gotion has been engaged since 2022 in the planning and construction of a new battery component manufacturing site and industrial park in Mecosta County, Michigan (the "**Project**").

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 15, and leaves Gotion to their proofs.

15.    Once completed, the Project is expected to produce up to 400,000 tons of cathode material every year. Both cathode material and anode material are essential components of lithium-ion batteries used in electric and hybrid vehicles.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 16, and leaves Gotion to their proofs.

16.    Nationally, the Project is one component of Gotion's larger strategy to establish a domestic EV battery supply chain. Gotion operates a battery pack factory in Fremont, California, and expects to begin production of lithium-ion batteries in a new facility located in Manteno, Illinois, by the end of 2024.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 17, and leaves Gotion to their proofs.

17.    Gotion has undertaken these initiatives with the support of German automobile manufacturer Volkswagen, which holds approximately one quarter of Gotion's shares and is a major purchaser of Gotion's batteries.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 18, and leaves Gotion to their proofs.

18.     Locally, the Project presents an enormous opportunity for Mecosta County and West Michigan.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 19, and leaves Gotion to their proofs.

19.     Gotion intends to invest $2.36 billion into the Project, which is expected to create approximately 2,350 well-paying jobs and bring transformative economic vitality to Mecosta County and its surrounding areas.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 20, and leaves Gotion to their proofs.

20.     The hourly compensation for the Project's employees is expected to be around $24.50, nearly 150% of the area's average hourly wage of $16.50. Combined with benefits such as health insurance and paid vacation, the total compensation package for employees of the Project is anticipated to be around $60,000.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 21, and leaves Gotion to their proofs.

21.     The anticipated indirect benefits of the Project are numerous.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 22, and leaves Gotion to their proofs.

22.     The Project is spurring significant improvements to local infrastructure, and anticipates creating new jobs by attracting ancillary businesses to the area. Additionally, Gotion plans to partner with nearby educational institutions to train a new generation of employees from the local population.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 23, and leaves Gotion to their proofs.

23.     Overall, the Project is expected to generate nearly $12 billion in personal income for those directly and indirectly employed by the Project over the next 20 years.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 24, and leaves Gotion to their proofs.

24.     Gotion has already invested substantial resources and efforts to the Project. For example, Gotion invested approximately $24,000,000 into the Project to acquire nearly 270 acres of land in the Township in August 2023, the majority of which is zoned for industrial use.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 25, and leaves Gotion to their proofs.

25.     Since October 2023 (after the Development Agreement was executed), Gotion has invested nearly $500,000 in additional costs for management and marketing fees, among other things.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 26, and leaves Gotion to their proofs.

26.     Further, Gotion has already committed $56,000,000 for employee salaries and infrastructure costs, and anticipates committing an additional $7,300,000 in architectural and engineering design contract commitments, among other things, in March 2024.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 27, and leaves Gotion to their proofs.

**National and State investments in EV technology**

27.     In August 2022, the United States Congress passed, and the President signed into law, the Inflation Reduction Act ("IRA").

> **ANSWER**: The Township admits the allegations contained in paragraph 28.

28.     The IRA provides tax incentives for domestic green energy initiatives. Within one year of its passage, the IRA prompted more than $110 billion of capital investments announced for clean energy manufacturing projects, including $70 billion towards establishing an electric vehicle ("EV") and battery supply chain in the United States.[1]

---

[1] *One Year On, Biden's IRA Has Changed the Battery Landscape*, Benchmark Source (Aug. 15, 2023), https://source.benchmarkminerals.com/article/one-year-on-the-ira-has-changed-the-battery-landscape-in-the-us (last accessed March 7, 2024).

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 29, and leaves Gotion to their proofs.

29.     The IRA provides a much-needed overhaul to the domestic production of EVs and EV batteries: today, the United States accounts only for approximately 10% of EV assembly globally and 7% of EV battery production.[2]

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 30, and leaves Gotion to their proofs.

30.     Michigan is one of the leading states in the production of green and renewable energy.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 31, and leaves Gotion to their proofs.

31.     As laid out in its Michigan Healthy Climate Plan, promulgated by Michigan's Department of Environment, Great Lakes, and Energy, the state has taken ambitious aim at obtaining 100% carbon neutrality by 2050.[3]

---

[2]     *Global Supply Chains of EV Batteries,* Int'l Energy Agency (July 2022), (https://iea.blob.core.windows.net/assets/4eb8c252-76b1-4710-8f5e-867e751c8dda/ GlobalSupplyChainsofEVBatteries.pdf (last accessed March 7, 2024).
[3]     *MI Healthy Climate Plan*, Mich. Dep't of Env't, Great Lakes, & Energy (Apr. 2022), at 4, https://www.michigan.gov/egle/-/media/Project/Websites/egle/Documents/Offices/ OCE/MI-Healthy-Climate-Plan.pdf?rev=d13f4adc2b1d45909bd708cafccbfffa&hash= 99437BF2709B9B3471D16FC1EC692588 (last accessed March 7, 2024).

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 33, and leaves Gotion to their proofs.

32.    Michigan's commitment to clean and renewable energy initiatives was reaffirmed recently, in November 2023, when the state legislature passed a series of landmark clean energy laws. *See* 2023 Mich. Pub. Acts 229, 231, 233-35.

**ANSWER**: The Township admits that Public Act 229, 331, 233-35 were enacted in 2023.

33.    The state's endorsement of these initiatives has spurred $20 billion in investments in various energy-related sectors within one year of the passage of the IRA and has secured for Michigan 14 large-scale works in clean energy, battery, and EV manufacturing, including Gotion's Project.[4]

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 24, and leaves Gotion to their proofs.

**State and Local Efforts to Bring the Project to West Michigan**

34.    Historic efforts by state and local governments secured the Project for West Michigan.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 35, and leaves Gotion to their proofs.

---

[4] *Gov. Whitmer Announces Launch of "State of Michigan Community EV Toolkit*," Mich. Exec. Off. Of the Governor (Apr. 25, 2023), https://www.michiganbusiness.org/press-releases/2023/04/michigan-winning-clean-energy-race (last access March 7, 2024).

35.     In September 2022, Mecosta County and the Township approved the designation of a 30-year Renaissance Zone tax abatement to attract Gotion and its Project to the region.

**ANSWER**: The Township admits that the former Township Board approved the 30-year Renaissance Zone.

36.     The designation is estimated to provide the Project a tax incentive package of $540 million.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 37, and leaves Gotion to their proofs.

37.     On September 29, 2022, Gotion submitted to the Michigan Economic Development Corporation (MEDC) an application for financial assistance to facilitate land acquisition, public infrastructure improvements, engineering, permitting, wetland mitigation and other associated costs in support of the Project.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 38, and leaves Gotion to their proofs.

38.     The MEDC is a subdivision of the Michigan Strategic Fund (MSF), a Michigan state agency that assists in identifying and promoting opportunities for economic development in the State of Michigan.

**ANSWER**: The Township admits to the allegations contained in paragraph 39.

39.     The MSF approved Gotion's application on October 5, 2022, for a grant of up to $50 million through the Strategic Site Readiness Program (SSRP), a program that offers economic

assistance for the development of investment-ready sites throughout Michigan and improves the infrastructure in the local community.

>   **ANSWER**: The SSRP Agreement, attached as Exhibit 3 to Gotion's complaint speaks for itself and no answer is required.

40.     The MSF also approved an additional $125 million Critical Industry Program (CIP) grant for the Project.

>   **ANSWER**: The Township admits to the allegations contained in paragraph 40.

41.     Through their combined efforts, state and local governments put forward a competitive $715 million tax incentive package that secured the Project for Michigan over forty-four other greenfield sites and twelve brownfield sites throughout the United States.

>   **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 42, and leaves Gotion to their proofs.

42.     On December 13, 2022, the Township unanimously adopted Resolution No. 01-122022 (the "Support Resolution"), expressing its support for Gotion and the Project and declaring that the Township "strongly supports efforts to bring Gotion Incorporated to our township and community, [and] that we will make every effort to work in the interests of our constituents and community by assisting Gotion Inc. in their efforts to join our community." A copy of the Support Resolution is attached hereto as **Exhibit 2.**

>   **ANSWER:** The Township admits that the previous Board adopted Resolution No. 01-122022. Gotion cites a copy of the Support Resolution as Exhibit 2 to their Complaint. Exhibit 2 speaks for itself.

**The Grant Agreement and Development Agreement**

43.     On September 15, 2023, Gotion and the MSF executed a Grant Agreement, which defines the terms and conditions for the disbursement of SSRP and CIP grant funds. A copy of the Grant Agreement is attached hereto as **Exhibit 3.**

**ANSWER**: No answer required. Exhibit 3 speaks for itself.

44.     The Grant Agreement required Gotion and the Township to enter into a separate agreement to provide for the completion of the public infrastructure improvements and site development in the Township necessary for the continuing viability of the Project. Ex. 3, Grant Agreement § 2.6(b)(i).

**ANSWER**: The Township admits that Gotion cited Section 2.6(b)(i) of the Grant Agreement. The Grant Agreement (Exhibit 3) speaks for itself.

45.     In a regular meeting of the Township Board on August 1, 2023, a first draft of the Development Agreement was unanimously approved and then-Supervisor James Chapman was unanimously authorized to finalize its terms and conditions with Gotion.

**ANSWER**: The Township admits that the former Township Boad passed a motion to approve the first draft of the Development Agreement and authorized the then-Supervisor to "finish the terms and conditions and reimbursement fees"; but denies that former Supervisor Chapman was authorized to execute the Development Agreement.

46.     Pursuant to Section 2.6(b)(i) of the Grant Agreement, Gotion and the Board executed the Development Agreement to define the terms and conditions governing the completion of public infrastructure improvements and site development in the Township necessary for the Project.

**ANSWER**: Section 2.6(b)(i) speaks for itself; however, the Township denies that the Development Agreement is enforceable.

47.     Among other things, the Development Agreement obligates the Township to:

assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project and conduct business to support the Project, for which the failure to obtain such licenses, permits, or other governmental authorizations is reasonably likely to materially and adversely affect the Project (financially or otherwise), or impair Gotion's ability to perform its obligations under this Agreement.

Ex. 1, Dev. Agmt., at § 4.c.

**ANSWER**: No response required. Gotion cited a specific provision of the Development Agreement, which speaks for itself; however, the Township denies that the Development Agreement is valid and binding.

48.     The Development Agreement further provides that "any material failure by either Party to comply with any of the terms, covenants and conditions" of the Agreement is an "event of default." *Id.* at § 7.b.

**ANSWER**: No response required. Gotion cited a specific provision of the Development Agreement, which speaks for itself; however, the Township denies that the Development Agreement is valid and binding.

49.     In the event of a default, the Development Agreement provides that "the non-breaching Party may immediately, after the expiration of any applicable Cure Period without a cure . . . exercise an[y] other available remedy at law or equity." *Id.* at § 7.g.a.

**ANSWER**: Gotion cited a specific provision of the Development Agreement, which speaks for itself; however, the Township denies that the Development Agreement is valid and binding.

50.     The "Cure Period" is defined as the sixty-day period after the non-breaching party provides written notice of the breach to the breaching party. *Id.*

> **ANSWER**: Gotion cited a specific provision of the Development Agreement, which speaks for itself; however, the Township denies that the Development Agreement is valid and binding.

**The City of Big Rapids Water System and the Water Resolution**

51.     Water infrastructure is a critical part of the Project's success, particularly in the Project's nascent stages, with an potential need of up to 715,000 gallons per day in the initial phases of operation.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 51, and leaves Gotion to their proofs.

52.     Because of the sizeable water needs of the Project, Gotion must obtain water from a source with sufficient capacity to effectively service the Project.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 52, and leaves Gotion to their proofs.

53.     After diligently reviewing its options for extending water to the Project, Gotion determined that the most feasible source is obtaining water from the City of Big Rapids.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 53, and leaves Gotion to their proofs.

54.     Pursuant to long-term agreements with the City, the Township has limited review-and-approval rights over proposed extensions of the City's water system. Specifically, in May 2000, the Township adopted Ordinance No. 16-52000, which granted the City the right to construct, install, maintain, operate, repair, and replace the City's water system along and under the public rights-of-way in the Township for a period of thirty years. A copy of Ordinance No. 16-52000 is attached hereto as **Exhibit 4**.

> **ANSWER**: Gotion cites Exhibit 4, which speaks for itself. To the extent a response is required, the Township admits that a previous Township Board adopted Ordinance No. 16-52000 in 2000.

55.     Under Ordinance No. 16-52000, proposed extensions of the City's water system through the Township "shall be subject to the review and approval of the Township." Ex. 4, Ord. No. 16-52000, at § 9. However, the scope of that review and approval process is strictly "limited to the impact such extensions may have on the orderly development of the Township consistent with the Township Master Plan." *Id.*

> **ANSWER**: Gotion cites Exhibit 4, which speaks for itself.

56.     After the adoption of Ordinance No. 16-52000, the Township and the City executed the Retail Water Service Agreement ("Water Agreement") in June and July 2000, which further defines the City's right to construct, install, maintain, operate, repair, and replace the various components of the water system in the Township. A copy of the Water Agreement is attached hereto as **Exhibit 5**.

> **ANSWER**: The Township admits that Exhibit 5 contains the Water Agreement. The provisions contained therein speak for itself.

57.     Under the terms of the Water Agreement, while the Township has the initial obligation to review plans and specifications to determine whether they are consistent with the Township's Master Plan, ultimately, "[t]he City shall have the *sole authority* for accepting or rejecting the request of the Township for service." Ex. 5, Water Agmt., at § 7 (emphasis added).

**ANSWER**: No answer required. Gotion cites Exhibit 5, which speaks for itself.

58.     In accordance with Ordinance 16-52000, Gotion submitted to the Township two sets of alternative plans and specifications to extend the City's water system through the Township to service the Project.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 8, and leaves Gotion to their proofs.

59.     Option A would involve extending a new water main from the City's current system to Gotion's property in Green Charter Township and constructing a water tower. *See* **Exhibit 6**, Option A Plans & Specs.

**ANSWER**: No answer required. Gotion cites Exhibit 6, which speaks for itself.

60.     Option B would involve constructing a new city well and water plant directly on or near Gotion's property. *See* **Exhibit 7**, Option B Plans & Specs.

**ANSWER**: No answer required. Gotion cites Exhibit 7, which speaks for itself.

61.     After reviewing both Options proposed by Gotion, the Mayor of Big Rapids, Fred Guenther, sent a letter to the Township "seeking Green Charter Township's approval of the plans and specifications for both options [A] and [B] so as not to require the City to come back later if one or the other option proves unfeasible."

**ANSWER**: The Township admits that the Mayor of Big Rapids sent a letter to the Township containing the quoted language. The quoted language speaks for itself.

62.     The Mayor further noted that "[i]n the City's view, neither option will have any adverse impact on future development in the Township inconsistent with the Township's Master Plan. Therefore, based on the limited scope of the Township's review, it is our hope that this review and approval process will not be controversial." *Id*.

**ANSWER**: No answer required. Gotion cites quoted language from the Mayor of Big Rapids. The quoted language, which is purely an opinion, speaks for itself.

63.     Honoring its obligation under the Development Agreement to obtain the necessary governmental authority necessary to advance the Project, the Township unanimously adopted Resolution No. 1012023 on October 10, 2023, approving Gotion's plans and specifications (the "Water Extension Resolution"). A copy of the Water Extension Resolution is attached hereto as **Exhibit 8**.

**ANSWER**: The Township admits that the previous Township Board adopted Resolution No. 1012023 on October 10, 2023. Gotion cites Exhibit 8, which speaks for itself.

64.     In the Water Extension Resolution, the Township acknowledged the limitations of the scope of its review and approval for proposed water extensions. Specifically, the Township noted that its oversight was limited to an evaluation of "the impact, if any, such extension may have on the orderly development of the Township consistent with the Township Master Plan[.]" Ex. 8, Water Extension Resolution.

**ANSWER**: No answer required. Gotion cites Exhibit 8, which speaks for itself.

65.     The Resolution further stated that the "Township Board hereby approves both sets of plans and specifications for the proposed extensions of the Water System . . . with the

understanding that the City may select, at its sole discretion, the option that is most feasible and convenient based on the circumstances and results of its efforts to obtain other required outside approvals." *Id.*

**ANSWER**: No answer required. Gotion cites Exhibit 8, which speaks for itself.

66.     The Water Extension Resolution further noted that, "[t]he Township Board, in approving the plans and specifications finds and determines that neither of the two alternative proposed extensions of the Water System will adversely impact the orderly development of the Township consistent with the Township's Master Plan." *Id.*

**ANSWER**: No answer required. Gotion cites Exhibit 8, which speaks for itself.

**Township Board turnover and rescission of the Water Extension Resolution and Support Resolution**

67.     Efforts to recall members of the Green Charter Township Board (the "Board") because of their support for the Project began in late 2022.

**ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 68, and leaves Gotion to their proofs.

68.     As a result of the recall efforts, Trustee James Peek resigned on June 13, 2023, and Trustee Gary Todd resigned on September 13, 2023. Peek was replaced by Sara Rasmussen and Todd was replaced by Daniel Hoeh.

**ANSWER**: The Township admits the allegations contained in paragraph 69.

69.     On November 7, 2023, the Township held an election to recall the other five members of the Board. All five remaining members, including the supervisor, two trustees, the clerk, and the treasurer, were recalled.

**ANSWER**: The Township admits to the allegations contained in paragraph 69.

70.     The five new members of the Board are Jason Kruse (Supervisor), Kelly Cushway (Trustee), Jeff Thorne (Trustee), Robert Henderson (Treasurer), and Corri Riebow (Clerk).

**ANSWER**: The Township admits to the allegations contained in paragraph 71.

71.     All five new members of the current Township Board have publicly expressed anti-Gotion sentiment.

**ANSWER**: The Township admits that the new Board members have made public statements about Gotion; the contents of those statements are subject to individual interpretation.

72.     Clerk Corrie Riebow, speaking on the new Board's stance on Gotion, shared with the media that "[w]e just plan on making it as difficult as possible for them to continue their process."[5]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

73.     She added that Gotion was "not their friend."[6]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

74.     Immediately prior to his election to the Board, Supervisor Jason Kruse was the founder and president of the Mecosta Environmental & Security Alliance ("MESA"), an organization that "exists to fund the legal efforts to stop the construction of" the Project.[7]

---

[5] B. Entin & D. Markham, *Michigan Town Votes to Oust Entire Govt. over Chinese Factory Plans*, NewsNation (November 8, 2023), https://www.newsnationnow.com/world/china/election-government-chinese-factory-plans (last accessed on March 7, 2024).
[6] *Id.*
[7] MESA, https://protectmecosta.org (last accessed on February 14, 2024).

**ANSWER**: The Township admits that Supervisor Jason Kruse was a founder and president of MESA and that the quoted language is contained in the cited material.

75.     Supervisor Kruse told reporters shortly after assuming the role of Board Supervisor that Gotion "can be stopped, 100 percent," and that his political office could be used to undermine Gotion's efforts: "There's a lot of holes that can be pulled apart and we can dissect this project."[8]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

76.     In another instance, Supervisor Kruse explained the straightforward purpose of his candidacy: "I'm elected to be a no-Gotion guy."[9]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

77.     Trustee Jeff Thorne told the media that he ran for the Board to "be in th[e] fight" against the Project: "I wouldn't be involved in this if I thought it was fruitless, if [the Project] was a done deal. There are a lot of things that can be done."[10]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

---

[8] M. Dilworth, *Michigan Campaigners Who Kicked Out Township's Entire Local Government*, Daily Mail (November 19, 2023), https://www.dailymail.co.uk/news/article-12754729/Michigan-Green-Charter-board-China-Gotion-factory (last accessed on March 7, 2024).
[9] P. Gardner, *New Scrutiny Challenges Michigan's Investment in Gotion EV Battery Plant*, Bridge Michigan (December 5, 2023), https://www.bridgemi.com/business-watch/new-scrutiny-challenges-michigans-investment-gotion-ev-battery-plant, (last accessed on March 7, 2024).
[10] Dilworth, *supra* note 8.

78.     Trustee Kelly Cushway bluntly told reporters: "Nothing would make me happier than for Gotion to pull out."[11]

**ANSWER**: The Township admits that the quoted language is contained in the cited material.

79.     On November 14, 2023—just one week after the recall election and in their first meeting—the new Township Board adopted Resolution No. 2023.01 in a 4-to-3 vote, rescinding the Water Extension Resolution, which had been unanimously adopted only a month prior. A copy of Resolution No. 2023.01, henceforth the "Resolution to Rescind," is attached hereto as **Exhibit 9**.

**ANSWER**: The Township admits to the allegations contained in paragraph 79.

80.     In breaking the tie on the 3-3 vote to adopt the Resolution to Rescind, the Township Supervisor stated that he would "flip a coin" and go with a vote to rescind the Water Extension Resolution.

**ANSWER**: The Township admits to the allegations contained in paragraph 80.

81.     The Township justified its abrupt reversal on the grounds that "the current elected board" lacked "sufficient time and legal expertise to review the Resolution and agreement terms." Ex. 10, Resolution to Rescind.

**ANSWER**: Gotion cited Exhibit 10, however, the Township believes Gotion intended to cite Exhibit 9. The Township admits that the language quoted in paragraph 81 is contained in Exhibit 9.

---

[11] M. Cho, *New Green Charter Township Board Sworn In*, WZZM13 (November 8, 2023), https://www.wzzm13.com/article/news/local/new-green-charter-twp-board-sworn-in/69-2c425548-e43c-4832-8eda-0cecb112c507 (last accessed on March 7, 2024).

82.     The Township also claimed that "the current board" had not been in "contact with the City to fully understand the details and or scope of the project." *Id.*

**ANSWER**: The Township admits that the language quoted in paragraph 82 is contained in Exhibit 9.

83.     The Township also claimed to have "NOT reviewed the two alternative sets of plans and specifications for the proposed extension of the Water System." *Id.*

**ANSWER**: The Township admits that the language quoted in paragraph 83 is contained in Exhibit 9.

84.     The Township failed to cite any authority to rescind the Water Extension Resolution.

**ANSWER**: The Township admits that the resolution did not cite the legal authority for rescinding the Water Extension Resolution; however, the rescission was a lawful action by the Board.

85.     At that same meeting, the Township also approved a motion to "continue investigating matters concerning Gotion." *Id.*

**ANSWER**: The Township admits that it passed the quoted motion at its November 14, 2024, meeting; however, the quoted language is not contained in Exhibit 10, as cited by Gotion.

86.     At a special meeting held on Sunday, December 3, 2023, the Township Board voted 5-to-2 to rescind the Support Resolution.  A copy of the minutes of this special meeting is attached hereto as **Exhibit 10**.

**ANSWER**: The Township admits that the Board voted to rescind the Support Resolution at a December 3, 2023, special meeting. Exhibit 10 speaks for itself.

87.     In the Support Resolution, adopted unanimously less than a year earlier, the Township had expressed its support for Gotion and the Project and declared that the Township would "assist[] Gotion Inc in their efforts to join our community." Ex. 2, Support Resolution.

**ANSWER**: The Township admits that the former Board adopted the Support Resolution. Exhibit 2 speaks for itself.

88.     With the rescission of the Support Resolution the Township made clear that it was not interested in "fully understanding" the nature of its Agreement with Gotion. The Township's only goal was, in the words of Clerk Corrie Riebow, to make it "as difficult as possible for them to continue their process."

**ANSWER**: The Township denies the allegations contained in paragraph 89.

89.     Nevertheless, the Development Agreement was and remains a legally binding agreement between Gotion and the Township.

**ANSWER**: The Township denies that the Development Agreement is legally binding.

**Breach Letter and the Township's Response**

90.     On December 8, 2023, Gotion, through its counsel, notified the Township that it was in material breach of the Development Agreement. A copy of this letter is attached hereto as **Exhibit 11**.

**ANSWER**: The Township admits that Exhibit 11 was mailed to the Township. Exhibit 11 speaks for itself; the Township denies that any breach occurred because the Development Agreement is not valid or effective.

91.     Gotion requested that the Township cure its breaches by rescinding the recently adopted resolutions and reinstating the Water Extension Resolution and the Support Resolution.

**ANSWER**: The Township admits that Gotion requested a cure, but the Township denies that any breach occurred.

92.     Pursuant to the Development Agreement, the Township had 60 days from the date of the letter to cure as requested. Ex 1, Dev. Agmt. at § 7.g.a.

**ANSWER**: The Township admits that the cited language is contained in the Development Agreement; however, the Township denies that any breach occurred.

93.     On February 8, 2024, the Township refused to cure its breach. A copy of this letter is attached hereto as **Exhibit 12**.

**ANSWER**: The Township denies that it breached the Development Agreement

94.     The letter "presumed that the Development Agreement is a binding and enforceable agreement on the parties," but added that "that presumption should not be construed as an admission by the Township that the Development Agreement is binding and enforceable." *Id*.

**ANSWER**: The Township admits that the quoted language is contained in Exhibit 12.

95.     In its letter, the Township did not dispute that the rescission of these resolutions was contrary to its obligations in the Development Agreement. Rather, the Township provided four supposed excuses for why it believed the rescissions of the Water Extension and Support Resolutions did not constitute a breach of the Development Agreement.

**ANSWER**: The Township denies that it breached the Development Agreement.

96.     First, it argued that the rescission of the Support Resolution did not affect the Project because the Support Resolution only "contained blanket *opinions*," and did not propose any particular action for the Project. *Id.*

**ANSWER**: The Township admits that the quoted language is contained in Exhibit 12, but denies that it breached the Development Agreement.

97.     Second, the Township argued that the Project's need for water was not presently necessary because Gotion lacked various permits, governmental approvals, and "a finalized public project design." *Id.*

> **ANSWER**: The Township admits that the quoted language is contained in Exhibit 12, but denies that it breached the Development Agreement.

98.     Third, it claimed that Gotion's December 8 letter indicated that Gotion believed the Township had no authority to approve expansions of the City's water system, and thus, should Gotion be correct, "Gotion should recognize that Township action is unnecessary for Proposed Project approvals and that the Township could not materially or adversely impact the Proposed Project." *Id.*

> **ANSWER**: The Township admits that the quoted language is contained in Exhibit 12, but denies that it breached the Development Agreement.

99.     Finally, the Township cited a December 6, 2023 article in the Big Rapids Pioneer that reported on "a very good meeting" between the Big Rapids City Manager and Township Supervisor Kruse, during which they discussed, among other topics, Gotion's proposed extensions to the water system.

> **ANSWER**: The Township admits to the allegations contained in paragraph 99.

100.    The Township included in its letter a list of six questions about the Project which the Township alleged to be "passing" to Gotion from "the public." *Id.* Most of the questions asked by the Township have nothing to do with the extension of water by the City.

> **ANSWER**: The Township admits that it included questions in its letter to Gotion.

101.    It also requested reasoning as to "why it will not answer" "if Gotion chooses to not answer" the questions. *Id.*

> **ANSWER**: No response required. Gotion cites Exhibit 12, which speaks for itself.

102.    A representative from Gotion has attended every Board meeting since November 2023 to answer questions from the Board and the public. The questions asked have either been addressed by Gotion in those public meetings or are questions that Gotion presently could not provide an answer.

> **ANSWER**: The Township lacks knowledge or information sufficient to form a belief about the truth regarding the allegations contained in paragraph 102, and leaves Gotion to their proofs.

**The Township Continues to Breach the Development Agreement**

103.    Even after Gotion provided notice of the Township's breaches of the Development Agreement, the Township has continued to take actions to intentionally interfere with Gotion's project in clear violation of the Development Agreement.

> **ANSWER**: The Township denies the allegations contained in paragraph 104; and further, the Township denies that the Development Agreement is valid and enforceable.

104.    For instance, shortly before this lawsuit was filed, the Township held yet another series of special meetings in February to initiate a proposed ordinance to create a planning commission, despite the fact that Township citizens already voted down a referendum to create a planning commission in the November 2023 election.  A copy of a February 21, 2024, meeting minutes is attached hereto as **Exhibit 13**.

> **ANSWER**: The Township admits that it held a special meeting in February 2024 to create a planning commission pursuant to its legislative authority. The Township admits that the Township electors voted down an initiative to establish a planning commission by the

previous Township Board. The Township denies that this has any relevance to the pending action.

105.    The Township Board indicated that it intends to appoint a 7-person planning commission to create township zoning, rezone Gotion's property, and reject all building permits.

**ANSWER**: The Township admits that it intends on creating a 7-person planning commission to create township zoning; however, the Township denies the allegations of rezoning properties and rejecting building permits as purely speculative. The Township has not enacted an interim zoning ordinance at time of this filing and it is not known whether any properties will be rezoned.

106.    On March 7, 2024, the Township served a Notice of Preliminary and Permanent Injunction on the Mecosta County Planning Commission. A copy of this Notice is attached hereto as **Exhibit 14**.

**ANSWER**: The Township admits to the allegations contained in paragraph 107. Exhibit 14 speaks for itself.

107.    In the Notice, the Township threatened a lawsuit against the County if the County did not stop processing Gotion's site plan and special use permit application that was submitted to the County for review on March 1, 2024 even though the ordinance to establish a planning commission will not take effect until April 27, 2024 at the earliest per Michigan's Zoning Enabling Act, and the Township does not currently have a zoning ordinance in place that would confer zoning jurisdiction on the Township. (*Id.*)  The Mecosta County Planning Commission is currently the sole body with zoning jurisdiction with respect to Gotion's site plan and special use permit application.

**ANSWER**: The Township admits to the allegations contained in paragraph 107. Exhibit 14 speaks for itself.

108.    The Township's March 7, 2024 Notice constitutes yet another breach of the Development Agreement, as it is a blatant refusal to "assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project." *See* **Exhibit 1**, Dev. Agmt. § 4(c).

**ANSWER**: The Township denies the allegations contained in paragraph 108. Additionally, at the time of this filing, no action has been filed against Mecosta County and it is speculative as to whether the Township will ever file an action against the County.

109.    The Township's continued breaches of the Development Agreement threaten to undermine the Project and thereby unravel an endeavor already years and millions of dollars in the making.

**ANSWER**: The Township denies that it has breached the Development Agreement in any way.

110.    To protect its investment, Gotion is left with no other option but to seek equitable relief from this Court.

**ANSWER**: The Township denies the allegations contained in paragraph 111.

**COUNT I**
**Breach of Development Agreement**

111.    Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

**ANSWER**: No answer required.

112.    Gotion and the Township entered into a binding contract in the form of the Development Agreement.

**ANSWER**: The Township denies that the Development Agreement was ever legally entered into by the Township.

113.    Gotion has fully performed its obligations under the Development Agreement and remains ready, willing, and able to continue performance.

**ANSWER**: The Township denies the allegations contained in paragraph 113.

114.    Under the Development Agreement, the Township is obligated to, among other things, "assist Gotion, to the extent legally permissible, in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project or conduct business to support the Project." *See* **Exhibit 1**, Dev. Agmt. § 4(c).

**ANSWER**: The Township denies that the Development Agreement is enforceable; if it is deemed to be enforceable then the Township denies that it must comply with certain provisions of the Development Agreement that usurp the Township's legislative authority.

115.    The Township breached the Development Agreement by its actions following the November recall election, including rescinding the Water Extension Resolution and the Support Resolution.

**ANSWER**: Township denies that any breach of the Development Agreement, if enforceable, has occurred.

116.    The Township further breached the Development Agreement through the March 7, 2024 Notice to the Mecosta County Planning Commission which threatens to enjoin the County from exercising its statutory obligations under the Zoning Enabling Act.

**ANSWER**: Township denies the allegations contained in paragraph 117.

117.    Specific performance is an appropriate remedy here because there is no adequate remedy at law for the Township's continuing refusal to follow its obligations under the Development Agreement, including approving the plans and specifications for the extension of the Township's water system to service the Project and otherwise supporting the Project.

**ANSWER**: Township denies the allegations contained in paragraph 118.

### PRAYER FOR RELIEF

WHEREFORE, Green Charter Township respectfully requests this Honorable Court to deny Gotion's requested relief, and enter a judgment dismissing all Gotion's claims and requested relief against Green Charter Township, with prejudice; award costs and attorneys' fees; and, any other relief this Court determine is just and proper.

Respectfully submitted,

BAUCKHAM, THALL, SEEBER,
KAUFMAN & KOCHES, P.C.

Dated: April 12, 2024                     *s/ T. Seth Koches* _____
                                          Seth Koches (P71761)
                                          Attorney for Green Charter Township
                                          470 W. Centre Ave., Suite A
                                          Portage, MI 49024
                                          (269) 382-4500
                                          koches@michigantownshiplaw.com

31

**<u>AFFIRMATIVE DEFENSES</u>**

NOW COMES the Defendant Charter Township of Green, by and through its attorney, Seth Koches of Bauckham, Thall, Seeber, Kaufman & Koches, P.C., and in response to the Complaint of Plaintiff, Gotion Inc., affirmatively states as follows:

1. Gotion has failed to state a claim upon which relief may be granted.

2. Gotion lacks standing.

3. Gotion's claims are not ripe.

4. Gotion's claim is moot.

5. Contrary to public policy.

6. Separation of power.

7. Violation of the Michigan Constitution.

8. Unenforceable Contract.

9. Defendant reserves the right to file such additional affirmative defenses as may become apparent pursuant to discovery procedures during the pendency of this matter.

WHEREFORE, Green Charter Township respectfully requests this Honorable Court to deny Gotion's requested relief, and enter a judgment dismissing all Gotion's claims and requested relief against Green Charter Township, with prejudice; award costs and attorneys' fees; and, any other relief this Court determine is just and proper.

                           Respectfully submitted,

                           BAUCKHAM, THALL, SEEBER,
                           KAUFMAN & KOCHES, P.C.

Dated: April 12, 2024            */s/ T. Seth Koches*_____
                           Seth Koches (P71761)
                           Attorney for Green Charter Township

470 W. Centre Ave., Suite A
Portage, MI 49024
(269) 382-4500
koches@michigantownshiplaw.com