**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GOTION, INC.,

              Plaintiff,

                                        Case No. 1:24-cv-00275

v.

                                        HON. JANE M. BECKERING

GREEN CHARTER TOWNSHIP,
a Michigan charter township,

              Defendant.

_____

**DEFENDANT GREEN CHARTER TOWNSHIP'S BRIEF IN SUPPORT OF MOTION**
**FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    Granting the Township the ability to amend its Answer serves the interest of justice. .......... 2

II.    The Township's amended answer and counterclaim are grounded in fact and law. ............... 6

III.    Gotion will not be prejudiced by the Township's amended answer and counterclaim..... 10

CONCLUSION....................................................................................................................11

CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.3................................ 13

CERTIFICATE OF SERVICE ........................................................................................... 14

## INDEX OF AUTHORITIES

**Cases**

*Arbuckle-Ryan Co v. City of Grand Ledge,*
   122 Mich 491; 81 N.W. 358 (1899) .................................................................. 9

*Barkey v. Nick,*
   11 Mich. App. 381; 161 N.W.2d 445 (1968) .................................................. 7

*Custard Hut Franchise LLC v. H&J Jawad LLC,*
   697 F. Supp 3d 723 (E.D. Mich. 2023) .......................................................... 8

*Dix v. Atos IT Solutions & Servs.,*
   ___F. Supp. 3d___; 2021 U.S. Dist. LEXIS 56632 (S.D. Ohio, Mar. 25, 2021) .................... 10

*Federal Crop Ins. Corp. v. Merrill,*
   332 U.S. 380 (1947) ........................................................................ 9

*Lucas v. Awaad,*
   299 Mich. App. 345; 830 N.W.2d 141 (2013) ............................................ 8, 9

*Marks v. Shell Oil Co.,*
   830 F.2d 68 (6th Cir. 1987) .................................................................. 1

*People ex rel Plugger v. Township Board of Overyssel,*
   11 Mich. 222 (1863) ......................................................................... 7

*Phelps v. McClellan,*
   30 F.3d 658 (6th Cir. 1994) .................................................................. 1

*Phelps v. McClennan,*
   30 F.3d 658 (6th Cir. 1994) ................................................................ 10

*Pyatt v. Mayor & Council of Borough of Dunellen in Middlesex County,*
   9 N.J. 548; 89 A.2d 1 (1952) ................................................................. 7

*Rose v. Hartford Underwriters Ins. Co.,*
   203 F.3d 417 (6th Cir. 2000) ................................................................. 1

*Stanley v. Western Mich Univ.,*
   105 F.4th 856 (6th Cir. 2024) ................................................................ 7

*Thiokol Corp. v. Department of Treasury Revenue Div.,*
   987 F.2d 376 (6th Cir. 1993) ................................................................. 7

*Wilson v. Iowa City,*
   165 N.W.2d 813 (Iowa, 1969) ............................................................ 7, 8

**Statutes**

M.C.L. § 15.342(6) ............................................................................. 7

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................ 1

Fed. R. Civ. P. 15(a)(2) ......................................................................... 1

## INTRODUCTION

Gotion filed this suit alleging a breach of the purported Development Agreement between it and the Township. Although the Township maintains the Development Agreement is not a binding contract, the course of discovery has revealed actions by Gotion that unquestionably violate the terms of the Development Agreement and warrant the assertion of a counterclaim by the Township, as this Court's initial impression has been that the Development Agreement is enforceable. Additionally, discovery has yielded significant factual developments relating to the formation and validity of the Development Agreement, including undisclosed conflicts of interest and improper influence on the former Township Supervisor allegedly tasked with negotiating and executing the Development Agreement without further Board approval, which calls for the assertion of additional affirmative defenses on behalf of the Township. As the facts giving rise to these claims and defenses have been well explored in discovery and as of the date of this motion the parties have not yet filed motions for summary judgment, the Township's request will not cause undue prejudice or delay.

## LEGAL STANDARD

Fed. R. Civ. P. 15(a)(2) provides that leave to amend a pleading "shall be freely given when justice requires." The Sixth Circuit interprets Fed. R. Civ. P. 15(a) to allow a party leave to assert an affirmative defense. *See e.g. Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Courts construe Rule 15(a)(2) as "setting forth a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, a motion to amend may be denied if there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417 (6th Cir. 2000).

1

# ARGUMENT

## I.  Granting the Township the ability to amend its Answer serves the interest of justice.

Discovery has revealed substantial irregularities in the execution of the purported Development Agreement and numerous material breaches of the same by Gotion. Without leave to file an amended answer and to assert a counterclaim against Gotion, the Township will be impaired in its ability to fully defend this action on the merits.

The formation of the Development Agreement has already been at issue in this case, but new facts have been brought to light that bolster the Township's position and warrant the assertion of additional affirmative defenses. These facts include an undisclosed pecuniary interest in the Gotion project held by Trustee Dale Jernstadt while he was serving the Township, specifically that Jernstadt believed that he was under contract to sell property to Gotion at an astronomical profit ($2,000,000.00 for vacant land Jernstadt purchased for $180,000.00 roughly a decade prior, contingent on the successful siting of the Project) (**Counterclaim Exhibit E,** p. 29); (**Counterclaim Exhibit G**). This conflict existed at the time that Jernstadt voted in favor of the Support Resolution, the Development Agreement, and the Water Extension Resolution (**Exhibit E,** at pp. 28; 34; 45; 60-61); (ECF 1-2, PageID.38); (ECF 13-2, PageID.262); (ECF 1-8, PageID.122). Although Jernstadt claimed to be serving the best interests of the Township when he participated in these decisions, he was poised to receive a sizeable personal benefit from Gotion's Project. Jernstadt never disclosed this personal incentive to assist Gotion to the Board or to the public, and prior Board members were apparently unaware of this conflict of interest (**Counterclaim Exhibit E**, pp. 45-46) (*See, e.g.*, **Counterclaim Exhibit C**, p. 59).

In addition, the production of text messages between Gotion VP Thelen and former Township Supervisor Chapman depict a troubling pattern of influence, particularly while Chapman

2

was purportedly tasked with negotiating and—according to Gotion—ultimately executing the Development Agreement. Following the August 1, 2023, Board vote on the Development Agreement, Chapman believed that the Board had vested him with *unlimited* discretion to make changes to the Development Agreement with the only limitation being his own ethics and undertook negotiations directly with Thelen and without any Board oversight (**Counterclaim Exhibit A,** p.80); (**Counterclaim Exhibit B,** pp. 88-94, 79-86).[1] In the two-week time period during and after the presentation of the Development Agreement to the Board, Thelen offered Chapman an all-expenses paid trip to Hefei, China, sought to take him on a golf outing in Oakland County, and donated (through Thelen's wife) to Chapman's recall campaign fund at or near the maximum contribution limit (*Id*. at pp. 75-77, 85).

Beyond these obvious attempts to influence Chapman's decision-making, Thelen espoused strong suggestions of a quid pro quo exchange on more than one occasion, stating to Chapman: "We got each other's backs," and "You have had my back now its (sic) my turn to help" (*Id*. at pp. 74, 123). Thelen had apparently formed a close relationship with Chapman before or during the negotiation of the Development Agreement, at one point telling Chapman: "U have Been a great partner and becoming an even better friend. I will help you however I can" (*Id*. at p. 60). Chapman never disclosed the gifts offered from Thelen (including the ones he accepted) to the Board, nor did he disclose that he had a significant personal relationship with the VP of the company with which the Board was dealing, both of which should have disqualified him from negotiating on behalf of the Township on the basis that he was incapable of acting impartially.

---

[1] As produced by Gotion, the text messages between Thelen and Chapman read in reverse chronological order and from the bottom of the page to the top.

Discovery also revealed that Chapman began working for Gotion promptly after the recall election (likely a product of his relationship with Thelen, the quid pro quo expectation between the two, or a combination of these factors), and that then-Township Treasurer MacFarlane had at least some understanding that employment with Gotion was a possibility following her defeat at the recall election (**Counterclaim Exhibit D**, pp. 54-55). Chapman's rapid transition from one "side" to the other, and MacFarlane's understanding that she may also have a place at Gotion following the recall are further evidence of offers of value to Township officials designed to impact their decision making in a manner favorable to Gotion.

Notably, not only did Jernstadt, Chapman, and MacFarlane fail to disclose their conflicts of interests, but Gotion also omitted any mention of these disqualifying interests during the negotiation of the Development Agreement. These facts go far beyond the abnormalities in the execution of the Development Agreement previously identified. Taken as a whole, these facts show that Gotion improperly and fraudulently induced and influenced the Township to enter into the Development Agreement. Absent leave to amend its answer, the Township risks impairment of its ability to defend against Gotion's Complaint, which depends on the validity and enforceability of the Development Agreement.

In addition, the Township discovered substantial and material breaches of Section 3(m) of the Development Agreement by Gotion, which prohibits Gotion from supporting or encouraging "any activity which supports or encourages any political philosophy amongst Gotion's employees or the Big Rapids community" (ECF 13-2, PageID.262). In reference to this provision of the Development Agreement, Thelen testified that: "I believe the words political philosophy have a wide range of meanings," that the "Big Rapids community" included Green Charter Township, and acknowledged that he understood the phrase "support or encourage" include "donating

4

money" or Gotion "support[ing] a political candidate" (**Counterclaim Exhibit H,** pp. 247-251). Despite this broad prohibition and Thelen's admitted understanding that "I am not in a position where I can voice any political opinion" and that "[i]f it is a political rally or a protest I cannot be there," Gotion heavily involved itself in local politics in an effort to cultivate pro-Gotion sentiment within the Big Rapids community (*Id*. at pp. 34; 228). These actions included:

- Thelen's coordination of pro-Gotion rallies with Board meetings headed by Chapman (**Counterclaim Exhibit B**, p. 64);

- Gotion's direct involvement in referendum election drives, including arranging for Gotion's counsel Warner Norcross + Judd to provide legal assistance related to referendum petitions on the Township's formation of a Planning Commission, an issue Thelen has characterized as being political in nature (ECF 61-7, PageID.660-62) (**Counterclaim Exhibit A**, p. 175; **Counterclaim Exhibit H**, pp. 213-16);

- Thelen's appearance at pro-Gotion rallies[2] and Gotion's PR firm supplying political signs for the same (**Counterclaim Exhibit H**, pp. 36-37)[3];

- Thelen's "virtual townhall" meetings conceived in concert with Gotion's PR firm to influence community attitudes toward Gotion and counteract political backlash (**Counterclaim Exhibit H**, pp. 219, 220); and

---

[2] *Rogers and Republican Leaders Rally to Bring Down Gotion Plant,* WCMU, Rick Brewer, published August 22, 2024 (accessed 9/20/2024) https://radio.wcmu.org/local-regional-news/2024-08-22/rogers-and-republican-leaders-rally-to-bring-down-gotion-plant.

[3] Interestingly, during his deposition, Thelen testified that the pro-Gotion counter-rally was a "celebration" (Counterclaim Exhibit H, p. 54). More than 100 signs were made for the pro-Gotion "celebration" by Gotion's PR firm, which happened to be planned and scheduled directly across the street from a political rally held by Mike Rogers, a Republican Senate Candidate that has taken political policy positions adverse to the Gotion Project. Thelen testified it was likely not a coincidence that the Gotion "celebration" occurred where and when it did (*Id*. at pp. 226-27).

- Statements made to various media outlets by Gotion's representatives designed to accomplish the same objectives, at times in conjunction with Chapman, including statements made the same day Chapman signed the Development Agreement, in which Thelen labeled anti-Gotion statements as "complete fabrication" and refuted "wrong" statements about Gotion's declaration and application to the Committee on Foreign Investment in the United States ("CIFUS") (**Counterclaim Exhibit H**, pp. 48; 57; 60).[4]

This Court has already indicated that it believes the Development Agreement to be a binding contract, and to that extent the Township's ability to fully defend itself in this suit depends in part on the assertion of a counterclaim against Gotion for such breaches, as well as an affirmative defense of first material breach.

## II.  The Township's amended answer and counterclaim are grounded in fact and law.

It is anticipated that Gotion will argue that permitting the Township's requested amendment would be futile. While futility may be grounds to deny a requested amendment, that has no basis here. A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Thiokol Corp. v. Department of Treasury Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir.

---

[4] *See, e.g.*, *Gotion, Inc. North American Manufacturing VP Refutes Recent Claims,* Cathie Crew, Published August 22, 2023 (accessed 9/20/2024) https://www.bigrapidsnews.com/news/article/michigan-gotion-north-american-manufacturing-vp-18309387.php; *Gotion Project in Green Charter Township a 'done deal,'* Cathie Crew, Published Nov. 1, 2023 (accessed 9/20/24) https://www.bigrapidsnews.com/news/article/gotion-green-charter-township-michigan-done-18459429.php; *Gotion, Inc. Donates $2,500 to Smoke Detector Program,* Cathie Crew, Published Jan. 12, 2024 (accessed 9/20/24) https://www.bigrapidsnews.com/news/article/gotion-inc-donates-big-rapids-michigan-smoke-18600785.php; *Gotion Inc. plans groundbreaking in Green Charter Township in 2024,* Cathie Crew, Published Jan. 17, 2024 (accessed 9/20/24) https://www.bigrapidsnews.com/news/article/green-charter-township-gotion-facility-18612849.php.

1993). This requires an amending counter-plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Stanley v. Western Mich Univ.,* 105 F.4th 856, 867 (6th Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009)).

The Township seeks to amend its answer to add affirmative defenses that the Development Agreement is illegal; that the Development Agreement is void due to undisclosed conflicts of interest; and fraud in the inducement. Public officials, such as members of a Township Board, are expressly forbidden by statute from participating in the execution of a contract with an entity in which the Board member may have a financial or personal interest. M.C.L. § 15.342(6). If a Board member votes on an issue in which that Board member has a conflict of interest, the decision of the Township Board is void by operation of law. *See, e.g., Barkey v. Nick*, 11 Mich. App. 381, 385; 161 N.W.2d 445 (1968); *People ex rel Plugger v. Township Board of Overyssel*, 11 Mich. 222 (1863). This approach has been adopted by other jurisdictions as well. *See, e.g.*, *Pyatt v. Mayor & Council of Borough of Dunellen in Middlesex County*, 9 N.J. 548; 89 A.2d 1 (1952) (unanimous decision through Justice William J. Brennan, Jr. holding that the participation of municipal officials "infected with the taint of self-interest" voidable); *Wilson v. Iowa City*, 165 N.W.2d 813, 819-20 (Iowa, 1969) ("[A] vote by a member of the [*city*] council on any of the challenged resolutions, if in violation of section 403.16 [*an Iowa statute with similar prohibitions to M.C.L. § 15.342(6)*], is void and that the result reached by the council in such a matter is also void, whether such vote determined the issue before the council or not").[5]

---

[5] The *Wilson* Court further noted: "The concurrence of an interested member in an action taken by the body taints it with illegality. * * * The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable. * * * This is the general rule. * * * It is supported by a twofold reason, viz.: First, the participation of the disqualified member in the discussion may have influenced the opinion of the other members; and, secondly, such

In determining the futility of an affirmative defense, the court must determine whether the defendant's allegations "raise the merits of the defense above a speculative level." *Custard Hut Franchise LLC v. H&J Jawad LLC*, 697 F. Supp 3d 723, 730 (E.D. Mich. 2023). The Township has met its burden to plead factual content sufficient to establish the defenses of illegality and that the Development Agreement is void due to undisclosed conflicts of interest; it has identified facts showing Trustee Jernstadt believed he stood to gain $2,000,000.00 upon the successful siting of the Project and never disclosed this proprietary interest, that Gotion VP Thelen engaged in a candid campaign to influence former Supervisor Chapman at the time when Chapman believed he had the untethered authority to make sweeping changes to the Development Agreement; and that additional personal incentives relating to employment with Gotion were offered to at least one if not two Board members who discussed or obtained employment with Gotion shortly following their recall from public office.

These same facts form the basis for the Township's affirmative defense of fraud. To prevail on a claim of fraud, a plaintiff must demonstrate the following six elements: (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation. *Lucas v. Awaad*, 299 Mich. App. 345, 363; 830 N.W.2d 141 (2013). Silent fraud occurs where "the defendant suppresse[s] the truth with the intent to defraud the plaintiff[.]" *Id.* at

---

participation may cast suspicion on the impartiality of the decision. * * * It being impossible to determine whether the virus of the self-interest affected the result, it must needs be assumed that it dominated the body's deliberations, and that the judgment was its product." *Id.* at 819-820 (*citing Piggott v. Hopewell*, 22 N.J. Super. 106, 111; 91 A.2d 667, 670 (Super. Ct. 1952)).

363-364. The Township's defense of fraud is premised on Gotion's intentional omission of known pecuniary interests to the Board, Gotion's presumed knowledge that such facts would need to be disclosed[6] and that disclosing them would jeopardize approval of the Development Agreement, the Board's reliance on the apparent absence of disqualifying conflicts of interest in allowing the conflicted members to participate in deliberations and voting, and the harm caused to the Township by the purported Development Agreement approved through a process tainted by conflict of interest.

The Township also seeks to add the affirmative defense of first material breach[7] and to assert a counterclaim for breach of contract against Gotion for the numerous actions Gotion has taken in violation of Section 3(m) of the Development Agreement which prohibits Gotion from supporting or encouraging any activity which supports or encourages any political philosophy. As above, the Township has pled sufficient facts to support this defense and claim, by identifying a series of actions by Gotion designed to sway political opinion in the Big Rapids community, including but not limited to coordinating pro-Gotion rallies, providing legal assistance for a referendum initiative, the appearance of its executives at pro-Gotion rallies and the use of its PR firm to distribute signs to demonstrators, hosting "virtual townhalls" designed to influence public perception and disseminate pro-Gotion information, and making various statements to media outlets in support of Gotion and against its opposition. To the extent the Development Agreement is an enforceable contract, Gotion plainly breached this provision and the Township was harmed

---

[6] *See Arbuckle-Ryan Co v. City of Grand Ledge,* 122 Mich 491; 81 N.W. 358 (1899) ("Parties dealing with municipal corporations through their agents are conclusively presumed to know the law, and deal with them at their own risk"); *see generally Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

[7] As it relates to this affirmative defense, the Township denies that it breached the Development Agreement, and to the extent a Court finds otherwise, any such breach was not material.

as a result, specifically through the irreversible influence of Gotion's actions to the ongoing political discourse within the Township.

Although the Development Agreement contains a notice and cure provision, that is inapplicable to the Township's breach of contract claim against Gotion, as the harm caused by political division sown by Gotion in the Big Rapids community is irreversible. "Michigan law also recognizes that not all breaches are curable. When a breach is 'incurable,' any notice-and-cure provision is inapplicable. As a result, the non-breaching party has no obligation to provide the breaching party notice and opportunity to cure." *Dix v. Atos IT Solutions & Servs.*, ___F. Supp. 3d___; 2021 U.S. Dist. LEXIS 56632, at *21 (S.D. Ohio, Mar. 25, 2021) (citing *Patel v. Wyandotte Hosp. & Med. Ctr., Inc.*, No. 230189, 2003 Mich. App. LEXIS 1068, 2003 WL 1985257 (Mich. Ct. App. Apr. 29, 2003)).

### III. Gotion will not be prejudiced by the Township's amended answer and counterclaim.

When evaluating the issue of prejudice, courts will ask whether "allowing amendment would require the opponent to expend significant additional resources to conduct discovery or prepare for trial" or "cause considerable delay in resolving the dispute." *Phelps v. McClennan*, 30 F.3d 658, 662-63 (6th Cir. 1994). Gotion will not be prejudiced if the Township is permitted to amend its answer to include additional defenses and to assert a counterclaim for breach of contract. Although discovery is closed, the facts and circumstances surrounding the relationship have been revealed by the discovery process and likely will not require further deposition testimony or an additional request for documents. Gotion's attorneys were present at every deposition at which testimony related to the Township's amendment was provided and had ample opportunity to elicit further testimony from such witnesses. As it relates to the Township's counterclaim, counsel for the Township unambiguously indicated at the deposition of Thelen that the testimony he provided

10

was being considered in relation to a breach of the Development Agreement. (**Counterclaim Exhibit H,** p. 246). Regarding the Township's assertion of conflicts of interest, counsel for Gotion expressly questioned Trustee Jernstadt about conflicts of interest. (**Counterclaim Exhibit E**, pp. 70-71). Counsel for Gotion also questioned former Supervisor Chapman on the topic of Thelen's donations to his campaign fund (**Counterclaim Exhibit A**, pp. 271-72).

Moreover, two of the key witnesses related to the Township's new counterclaim and affirmative defenses—James Chapman and Charles Thelen—have already provided sworn declarations to Gotion and the Township anticipates they will remain willing to do so in the future if requested[8] (ECF 3-1, PageID.182-87); (ECF 17-1, PageID.305-07). In addition, Gotion is almost certainly in possession of all relevant documentation related to the property purchase contract giving rise to Trustee Jernstadt's undisclosed conflict of interest, which have not yet (and may never be) produced to the Township (*see* **Counterclaim Exhibit I,** p. 56).

The timing of this Motion is also relevant to the lack of prejudice to Gotion. The Township has not previously amended any of its pleadings. As of the date of this Motion, the parties are still in the process of resolving discovery disputes and have not yet exchanged motions for summary judgment. As this case has barely progressed past discovery, amendment will not cause any undue delays or prejudice to Gotion.

## CONCLUSION

WHEREFORE, the Township respectfully requests that this Honorable Court grant it leave to file its First Amended Answer and Counterclaim.

---

[8] See **Counterclaim Exhibit A,** p. 257 (Counsel for Gotion indicates Chapman would answer Gotion's questions "by declaration later").

Respectfully submitted,

*Bauckham, Thall, Seeber,*
*Kaufman & Koches, P.C.*

Dated: September 20, 2024          /s/ *T. Seth Koches*
                                   Seth Koches (P71761)
                                   Attorney for Green Charter Township
                                   470 W. Centre Ave., Suite A
                                   Portage, MI 49024
                                   (269) 382-4500
                                   koches@michigantownshiplaw.com


                                   *Fahey Schultz Burzych Rhodes PLC*

Dated: September 20, 2024          /s/ *Kyle A. O'Meara*
                                   Christopher S. Patterson (P74350)
                                   Eric P. Conn (P64500)
                                   Kyle A. O'Meara (P83075)
                                   4151 Okemos Road, Okemos, Michigan 48864
                                   (517) 381-0100
                                   cpatterson@fsbrlaw.com
                                   econn@fsbrlaw.com
                                   komeara@fsbrlaw.com

                                   *Eckland & Blando*

Dated: September 20, 2024          /s/ *Robert T. Dube Jr.*
                                   Mark J. Blando, Esq. (#MN38988)
                                   Robert T. Dube Jr., Esq. (#MN401597)
                                   10 South Fifth St., Suite 800
                                   Minneapolis, MN 55402
                                   (612) 236-0160
                                   mblando@ecklandblando.com
                                   rdube@ecklandblando.com

                                   *Attorneys for Defendant*
                                   *Green Charter Township*

12

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.3**

This brief complies with the type-volume limitation of Local Rule 7.3 because it contains 3,475 words, excluding the parts exempted by Local Rule 7.3(b)(i). This brief was prepared using Microsoft Word 365.

Respectfully submitted,

*Bauckham, Thall, Seeber,*
*Kaufman & Koches, P.C.*

Dated: September 20, 2024　　　　/s/ *T. Seth Koches*
Seth Koches (P71761)
Attorney for Green Charter Township
470 W. Centre Ave., Suite A
Portage, MI 49024
(269) 382-4500
koches@michigantownshiplaw.com

*Fahey Schultz Burzych Rhodes PLC*

Dated: September 20, 2024　　　　/s/ *Kyle A. O'Meara*
Christopher S. Patterson (P74350)
Eric P. Conn (P64500)
Kyle A. O'Meara (P83075)
4151 Okemos Road, Okemos, Michigan 48864
(517) 381-0100
cpatterson@fsbrlaw.com
econn@fsbrlaw.com
komeara@fsbrlaw.com

*Eckland & Blando*

Dated: September 20, 2024　　　　/s/ *Robert T. Dube Jr.*
Mark J. Blando, Esq. (#MN38988)
Robert T. Dube Jr., Esq. (#MN401597)
10 South Fifth St., Suite 800
Minneapolis, MN 55402
(612) 236-0160
mblando@ecklandblando.com
rdube@ecklandblando.com

*Attorneys for Defendant*
*Green Charter Township*

13

**CERTIFICATE OF SERVICE**

I, Kaylin J. Montague, hereby certify that on the 20th day of September 2024, I electronically filed the foregoing document and any attachments with the ECF system which will send notification of such to all parties of record.

*/s/ Kaylin J. Montague*
Kaylin J. Montague

14