**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GOTION, INC.,

      Plaintiff,

v.

GREEN CHARTER TOWNSHIP,
a Michigan general law township,

      Defendant.

No.    1:24-cv-00275

Hon.  Jane M. Beckering

## FIRST AMENDED COMPLAINT

Plaintiff Gotion, Inc. ("**Gotion**"), through its counsel, Dickinson Wright PLLC ("**Dickinson**"), for its First Amended Complaint against Defendant Green Charter Township (the "**Township**") states as follows:

### INTRODUCTION

1. This case arises from the unlawful actions of the Green Township Board, the majority of whom are motivated by clear anti-Gotion animus, which resulted in the harm complained of in this case.

2. In August 2023, Gotion and the Township entered into a binding contract (the "**Development Agreement**"), under which, in relevant part, the Township agreed to assist Gotion in obtaining the necessary governmental authorizations to advance Gotion's electric vehicle battery component manufacturing project, which includes authorizations to construct water infrastructure for the Project, support development of the site plan for the Project, and otherwise fully partner with Gotion to realize development of a  production facility in Green Charter Township (the "**Project**").

1

3.  With a Project of this level of complexity, cost, and commitment, Gotion's decision to invest in Michigan, build a manufacturing facility, and develop a long-term partnership with the local community was contingent on receiving the full support of both the local and state governments.  In fact, no Project of this size could advance without that full support.

4.  Prior to Gotion deciding to move forward with its Project in Green Charter Township, it had received support and encouragement from both Green Charter Township, Mecosta County, and the state of Michigan.  It was because of this unwavering support at the time that Gotion felt comfortable moving forward with the Project.

5.  One of the early challenges for this Project was to overcome the lack of water to the Project site. Under a long-standing agreement between the Township and the City of Big Rapids, any proposed extension of the City's water system through the Township is subject to the Township's review and approval.

6.  In October 2023, the Township complied with its contractual obligations by adopting a resolution approving Gotion's plans to connect the City's water system to Gotion's Project.

7.  Just one month later, the Township abruptly reneged on its contractual obligations by rescinding the resolution. The only thing that changed between October and November was the composition of the Township's Board, most of whose members are now ardently opposed to Gotion's Project. The Board gave no legal reason for its sudden refusal to honor its contractual obligations.

8.  Since that time, the Township continued to engage in actions that violate the Development Agreement in an admitted attempt to block Gotion's Project.

9.  In a last-ditch effort to get the Township to comply with its obligations under the Development Agreement, Gotion filed its original complaint against the Township, alleging breach of

contract and seeking only specific performance of the Development Agreement along with a motion for preliminary injunction on March 15, 2024.

10. Even following the litigation, the Township continued to breach its obligations under the Development Agreement, and continued to issue public statements against Gotion's Project, making it clear to Gotion that any attempt to move forward with the Project would be met with opposition and hostility.

11. On May 17, 2024, this Court granted Gotion's motion for a preliminary injunction, finding that Gotion is likely to succeed on the merits of its breach of contract claim against the Township and ordering the Township to comply with and perform in accordance with the Development Agreement. *See* ECF No. 2 at PageID.351.

12. Instead of abiding by the Court's order and complying with its contractual obligations, the Township waited several months and then appealed and moved to stay the Court's Order for injunctive relief on September 6, 2024. The Township's actions clearly signaled that, despite the granting of the injunction, the Township had no intention of allowing the Project to proceed and, in fact, was willing to continue spending taxpayers' dollars to oppose the Project.

13. While the Township continued to stoke the fire through public statements, the vitriol towards this Project reached the national stage when current members of Congress and candidates for federal office announced opposition to the Project. Even then candidate for Vice President Mr. J.D. Vance was invited to visit the Project site during the Presidential campaign to voice support for the opposition.

14. While pending appeal, the Michigan Strategic Fund ("MSF") issued a notice of default to Gotion on September 15, 2025, which Gotion responded to one month later denying any default. The State's Attorney General's office then followed up with a demand to Gotion that

it reimburse the sum of over \$23 million dollars advanced towards development and land costs of the Project.

15. In addition to the formal notice issued by the MSF, representatives of the Michigan Economic Development Corporation publicly declared the Project was dead and that the state of Michigan no longer intended to support it.

16. Following the MSF's letter, the Township and its supporters continue to make statements in opposition of the Project, and in further breach of the Township's contractual obligation to support the Project.

17. In fact, after the present lawsuit was filed, the Township continuously opposed the Project and even denied that it was bound by any contractual obligations, going so far as to state:

   a. "The purported authorization of the Development Agreement was invalid and its terms are not enforceable." ECF 13, PageID.244;

   b. "As the Development Agreement is largely predicated upon illusory promises, no consideration was exchanged. A contract lacking consideration is not valid." ECF 13, PageID.245;

   c. "The Development Agreement, if enforced, violated the Michigan Constitution." ECF 13, PageID.247.

   d. "[Mr. Chapman's] improper legislative delegation renders the Development Agreement void and unenforceable" *Gotion, Inc. v. Green Charter Township*, Case No. 24-1783 (6th Cir.), Brief of Appellant Green Charter Township, ECF 27, at p. 51.

18. These statements show that the Township never intended to abide by its contractual obligations, even despite this Court entering a preliminary injunction (ECF 22 and ECF 23).

4

19. On February 25, 2026, the U.S. Sixth Circuit Court of Appeals ("6th Circuit") found that Gotion's claim for injunctive relief only was now moot due to the State's withdrawal of support for the Project, implying that Gotion's proper remedy is monetary relief now that the Project was unable to proceed due to the Township's opposition. Consequently, the case was remanded to the district court for further proceedings.

20. Because of the Township's actions causing the breach, the Township's actions and statements prior to and throughout the litigation in opposition to the Project, the MSF's actions to terminate the State's support, and the decision by the U.S. Sixth Circuit Court of Appeals, continued performance of the Development Agreement is no longer viable and Gotion's only remedy to make itself whole is to seek monetary damages from the Township.

21.  Based upon these factual developments that have come to pass since the filing of the original Complaint, justice now requires the addition to this action of the claims discussed below.

22. The Township's breach of the Development Agreement and related actions have made it impossible for the Project to move forward. Gotion has sunk millions into the Project yet has been stonewalled by the Township, which insists that Gotion's Project be quashed at all costs. It has become painfully clear to Gotion that there is no hope that this Project can be saved, and its request for injunctive relief only is no longer sufficient to alleviate the real harm caused to it by the Township's breach.

23. Therefore, justice requires that the Township make Gotion whole for the damages it has caused, and Gotion now files this first amended complaint seeking monetary damages from the Township.

## PARTIES, JURISDICTION, AND VENUE

24. Plaintiff Gotion, Inc., is a California corporation with its registered office located in the State of California at 48660 Kato Road, Fremont, California 94538.

25. Defendant Green Charter Township is a Michigan general law township existing under the laws of the State of Michigan with its principal office at 21431 Northland Drive, Paris, Michigan 49338.

26. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

27. This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as Gotion brings claims arising under the U.S. Constitution and its amendments.

28. Moreover, the Development Agreement provides that jurisdiction is proper in federal courts in Michigan. *See* **Exhibit 1**, Dev. Agmt. § 14.

29. This Court is a proper venue for this action under 28 U.S.C. § 1391(b) because Defendant is located in this district.

## GENERAL ALLEGATIONS

### Gotion and the Project

30. Incorporated in California in 2014, Gotion is a subsidiary of Gotion High-Tech Co., which is one of the world's largest electric vehicle ("**EV**") battery manufacturers and has been named on Bloomberg's list of top 25 new energy producers.

31. Gotion has been engaged since 2022 in the planning and construction of a new battery component manufacturing site and industrial park in Mecosta County, Michigan (the "**Project**").

6

32. Once completed, the Project was expected to produce up to 400,000 tons of cathode material every year. Both cathode material and anode material are essential components of lithium-ion batteries used in electric and hybrid vehicles.

33. Nationally, the Project was one component of Gotion's larger strategy to establish a domestic EV battery supply chain.

34. Gotion has undertaken these initiatives with the support of German automobile manufacturer Volkswagen, which holds approximately one quarter of Gotion's shares and is a major purchaser of Gotion's batteries.

35. Locally, the Project represented an enormous opportunity for Mecosta County and West Michigan.

36. Gotion intended to invest $2.36 billion into the Project, which was expected to create approximately 2,350 well-paying jobs and bring transformative economic vitality to Mecosta County and its surrounding areas.

37. The hourly compensation for the Project's employees was expected to be around $24.50, nearly 150% of the area's average hourly wage of $16.50. Combined with benefits such as health insurance and paid vacation, the total compensation package for employees of the Project was anticipated to be around $60,000.

38. The anticipated indirect benefits of the Project were numerous.

39. Overall, the Project was expected to generate nearly $12 billion in personal income for those directly and indirectly employed by the Project over the next 20 years.

40. Gotion has already invested substantial resources and efforts into the Project. For example, Gotion invested approximately $24,000,000 into the Project to acquire nearly 270 acres of land in the Township in August 2023, the majority of which was zoned for industrial use.

41. Since October 2023 (after the Development Agreement was executed), Gotion has invested nearly $500,000 in additional costs for management and marketing fees, among other things.

42. Further, Gotion committed $56,000,000 for employee salaries and infrastructure costs, and anticipated committing an additional $7,300,000 in architectural and engineering design contract commitments, among other things.

**State and Local Efforts to Bring the Project to West Michigan**

43. Historic efforts by state and local governments secured the Project for West Michigan.

44. In September 2022, Mecosta County and the Township approved the designation of a 30-year Renaissance Zone tax abatement to attract Gotion and its Project to the region.

45. The designation was estimated to provide the Project a tax incentive package of $540 million.

46. On September 29, 2022, Gotion submitted to the Michigan Economic Development Corporation (the "**MEDC**") an application for financial assistance to facilitate land acquisition, public infrastructure improvements, engineering, permitting, wetland mitigation and other associated costs in support of the Project.

47. The MEDC is a subdivision of the MSF, a Michigan state agency that assists in identifying and promoting opportunities for economic development in the State of Michigan.

48. The MSF approved Gotion's application on October 5, 2022, for a grant of up to $50 million through the Strategic Site Readiness Program ("**SSRP**"), a program that offers economic assistance for the development of investment-ready sites throughout Michigan and improves the infrastructure in the local community.

49. The MSF also approved an additional $125 million Critical Industry Program ("**CIP**") grant for the Project.

50. Through their combined efforts, state and local governments put forward a competitive $715 million tax incentive package that secured the Project for Michigan over forty-four other greenfield sites and twelve brownfield sites throughout the United States.

51. On December 13, 2022, the Township unanimously adopted Resolution No. 01-122022 (the "**Support Resolution**"), expressing its support for Gotion and the Project and declaring that the Township "strongly supports efforts to bring Gotion Incorporated to our township and community, [and] that we will make every effort to work in the interests of our constituents and community by assisting Gotion Inc. in their efforts to join our community." A copy of the Support Resolution is attached hereto as **Exhibit 2**.

<strong>The Grant Agreement and Development Agreement</strong>

52. On September 15, 2023, Gotion and the MSF executed a Grant Agreement, which defines the terms and conditions for the disbursement of SSRP and CIP grant funds. A copy of the Grant Agreement is attached hereto as **Exhibit 3**.

53. The Grant Agreement required Gotion and the Township to enter into a separate agreement to provide for the completion of the public infrastructure improvements and site development in the Township necessary for the continuing viability of the Project. Ex. 3, Grant Agreement § 2.6(b)(i).

54. In a regular meeting of the Township Board on August 1, 2023, a first draft of the Development Agreement was unanimously approved and then-Supervisor James Chapman was unanimously authorized to finalize its terms and conditions with Gotion.

55. Pursuant to Section 2.6(b)(i) of the Grant Agreement, Gotion and the Board executed the Development Agreement to define the terms and conditions governing the completion of public infrastructure improvements and site development in the Township necessary for the Project.

56. Among other things, the Development Agreement obligates the Township to:

> assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project and conduct business to support the Project, for which the failure to obtain such licenses, permits, or other governmental authorizations is reasonably likely to materially and adversely affect the Project (financially or otherwise), or impair Gotion's ability to perform its obligations under this Agreement.

> Ex. 1, Dev. Agmt., at § 4.c.

57. The Development Agreement further provides that "any material failure by either Party to comply with any of the terms, covenants and conditions" of the Agreement is an "event of default." *Id.* at § 7.b.

58. In the event of a default, the Development Agreement provides that "the nonbreaching Party may immediately, after the expiration of any applicable Cure Period without a cure . . . exercise an[y] other available remedy at law or equity." *Id.* at § 7.g.a.

59. The "Cure Period" is defined as the sixty-day period after the non-breaching party provides written notice of the breach to the breaching party. *Id.*

**The City of Big Rapids Water System and the Water Resolution**

60. Water infrastructure was a critical part of the Project's success, particularly in the Project's nascent stages, with a potential need of up to 715,000 gallons per day in the initial phases of operation.

61. Because of the sizeable water needs of the Project, Gotion needed to obtain water from a source with sufficient capacity to effectively service the Project.

62. After diligently reviewing its options for extending water to the Project, Gotion determined that the most feasible source was obtaining water from the City of Big Rapids.

63. Pursuant to long-term agreements with the City, the Township has limited review-and-approval rights over proposed extensions of the City's water system. Specifically, in May 2000, the

Township adopted Ordinance No. 16-52000, which granted the City the right to construct, install, maintain, operate, repair, and replace the City's water system along and under the public rights-of-way in the Township for a period of thirty years. A copy of Ordinance No. 16- 52000 is attached hereto as **Exhibit 4**.

64. Under Ordinance No. 16-52000, proposed extensions of the City's water system through the Township "shall be subject to the review and approval of the Township." Ex. 4, Ord. No. 16-52000, at § 9. However, the scope of that review and approval process is strictly "limited to the impact such extensions may have on the orderly development of the Township consistent with the Township Master Plan." *Id.*

65. After the adoption of Ordinance No. 16-52000, the Township and the City executed the Retail Water Service Agreement ("**Water Agreement**") in June and July 2000, which further defines the City's right to construct, install, maintain, operate, repair, and replace the various components of the water system in the Township. A copy of the Water Agreement is attached hereto as **Exhibit 5**.

66. Under the terms of the Water Agreement, while the Township has the initial obligation to review plans and specifications to determine whether they are consistent with the Township's Master Plan, ultimately, "[t]he City shall have the *sole authority* for accepting or rejecting the request of the Township for service." Ex. 5, Water Agmt., at § 7 (emphasis added).

67. In accordance with Ordinance 16-52000, Gotion submitted to the Township two sets of alternative plans and specifications to extend the City's water system through the Township to service the Project.

68. Option A would involve extending a new water main from the City's current system to Gotion's property in Green Charter Township and constructing a water tower. *See* **Exhibit 6**, Option A Plans & Specs.

69. Option B would involve constructing a new city well and water plant directly on or near Gotion's property. *See* **Exhibit 7**, Option B Plans & Specs.

70. After reviewing both Options proposed by Gotion, the Mayor of Big Rapids, Fred Guenther, sent a letter to the Township "seeking Green Charter Township's approval of the plans and specifications for both options [A] and [B] so as not to require the City to come back later if one or the other option proves unfeasible."

71. The Mayor further noted that "[i]n the City's view, neither option will have any adverse impact on future development in the Township inconsistent with the Township's Master Plan. Therefore, based on the limited scope of the Township's review, it is our hope that this review and approval process will not be controversial." *Id.*

72. Honoring its obligation under the Development Agreement to obtain the necessary governmental authority necessary to advance the Project, the Township unanimously adopted Resolution No. 1012023, (the "**Water Extension Resolution**"), on October 10, 2023, approving Gotion's plans and specifications. A copy of the Water Extension Resolution is attached hereto as **Exhibit 8**.

73. In the Water Extension Resolution, the Township acknowledged the limitations of the scope of its review and approval for proposed water extensions. Specifically, the Township noted that its oversight was limited to an evaluation of "the impact, if any, such extension may have on the orderly development of the Township consistent with the Township Master Plan[.]" Ex. 8, Water Extension Resolution.

74. The Resolution further stated that the "Township Board hereby approves both sets of plans and specifications for the proposed extensions of the Water System . . . with the understanding that the City may select, at its sole discretion, the option that is most feasible and convenient based on the circumstances and results of its efforts to obtain other required outside approvals." *Id.*

75. The Water Extension Resolution further noted that, "[t]he Township Board, in approving the plans and specifications finds and determines that neither of the two alternative proposed extensions of the Water System will adversely impact the orderly development of the Township consistent with the Township's Master Plan." *Id.*

**Township Board turnover and rescission of the Water Extension Resolution and Support Resolution**

76. Efforts to recall members of the Green Charter Township Board (the "**Board**") because of their support for the Project began in late 2022.

77. As a result of the recall efforts, Trustee James Peek resigned on June 13, 2023, and Trustee Gary Todd resigned on September 13, 2023. Peek was replaced by Sara Rasmussen and Todd was replaced by Daniel Hoeh.

78. On November 7, 2023, the Township held an election to recall the other five members of the Board. All five remaining members, including the supervisor, two trustees, the clerk, and the treasurer, were recalled.

79. The five new members of the Board are Jason Kruse (Supervisor), Kelly Cushway (Trustee), Jeff Thorne (Trustee), Robert Henderson (Treasurer), and Corri Riebow (Clerk).

80. All five new members of the current Township Board have publicly expressed anti-Gotion sentiment and have specifically targeted Gotion in their actions taken in their official capacities.

81. Clerk Corrie Riebow, speaking on the new Board's stance on Gotion, shared with the media that "[w]e just plan on making it as difficult as possible for them to continue their process."[1]

82. She added that Gotion was "not their friend."[2]

83. Immediately prior to his election to the Board, Supervisor Jason Kruse was the founder and president of the Mecosta Environmental & Security Alliance ("**MESA**"), an organization that "exists to fund the legal efforts to stop the construction of" the Project.[3]

84. Supervisor Kruse told reporters shortly after assuming the role of Board Supervisor that Gotion "can be stopped, 100 percent," and that his political office could be used to undermine Gotion's efforts: "There's a lot of holes that can be pulled apart and we can dissect this Project."[4]

85. In another instance, Supervisor Kruse explained the straightforward purpose of his candidacy: "I'm elected to be a no-Gotion guy."[5]

86. Trustee Jeff Thorne told the media that he ran for the Board to "be in th[e] fight" against the Project: "I wouldn't be involved in this if I thought it was fruitless, if [the Project] was a done deal. There are a lot of things that can be done."[6]

---

[1] B. Entin & D. Markham, *Michigan Town Votes to Oust Entire Govt. over Chinese Factory Plans*, NewsNation (November 8, 2023), https://www.newsnationnow.com/world/china/electiongovernment-chinese-factory-plans (last accessed on March 7, 2024).

[2] *Id.*

[3] MESA, https://protectmecosta.org (last accessed on February 14, 2024).

[4] M. Dilworth, *Michigan Campaigners Who Kicked Out Township's Entire Local Government*, Daily Mail (November 19, 2023), https://www.dailymail.co.uk/news/article-12754729/Michigan-Green-Charter-board-China-Gotion-factory (last accessed on March 7, 2024).

[5] P. Gardner, *New Scrutiny Challenges Michigan's Investment in Gotion EV Battery Plant*, Bridge Michigan (December 5, 2023), https://www.bridgemi.com/business-watch/new-scrutinychallenges-michigans-investment-gotion-ev-battery-plant, (last accessed on March 7, 2024).

[6] Dilworth, *supra* note 8.

87. Trustee Kelly Cushway bluntly told reporters: "Nothing would make me happier than for Gotion to pull out."[7]

88. Simply put, these new Board members come in with a pre-determined opinion on Gotion and hellbent on impeding Gotion's Project in violation of the Board's obligations in the Development Agreement.  *See, e.g.,* Ex. 1, Dev. Agmt., at § 4.c.

89. On November 14, 2023, just one week after the recall election and in their first meeting, the new Township Board adopted Resolution No. 2023.01 in a 4-to-3 vote, rescinding the Water Extension Resolution, which had been unanimously adopted only a month prior. A copy of Resolution No. 2023.01, henceforth the "**Resolution to Rescind**," is attached hereto as **Exhibit 9**.

90. In breaking the tie on the 3-3 vote to adopt the Resolution to Rescind, the Township Supervisor stated that, rather than deciding on any rational basis, he would "flip a coin" and go with a vote to rescind the Water Extension Resolution.

91. The Township justified its abrupt reversal on the grounds that "the current elected board" lacked "sufficient time and legal expertise to review the Resolution and agreement terms." Ex. 10, Resolution to Rescind.

92. The Township also claimed that "the current board" had not been in "contact with the City to fully understand the details and or scope of the Project." *Id.*

93. The Township also claimed to have "NOT reviewed the two alternative sets of plans and specifications for the proposed extension of the Water System." *Id.*

94. The Township failed to cite any authority to rescind the Water Extension Resolution.

---

[7] M. Cho, *New Green Charter Township Board Sworn In*, WZZM13 (November 8, 2023), https://www.wzzm13.com/article/news/local/new-green-charter-twp-board-sworn-in/69-2c425548-e43c-4832-8eda-0cecb112c507 (last accessed on March 7, 2024).

95. At that same meeting, the Township also approved a motion to "continue investigating matters concerning Gotion." *Id.*

96. At a special meeting held on Sunday, December 3, 2023, the Township Board voted 5-to-2 to rescind the Support Resolution. A copy of the minutes of this special meeting is attached hereto as **Exhibit 10**.

97. In the Support Resolution, adopted unanimously less than a year earlier, the Township had expressed its support for Gotion and the Project and declared that the Township would "assist[] Gotion Inc in their efforts to join our community." Ex. 2, Support Resolution.

98. With the rescission of the Support Resolution the Township made clear that it was not interested in "fully understanding" the nature of its Agreement with Gotion. The Township's only goal was, in the words of Clerk Corrie Riebow, to make it "as difficult as possible for them to continue their process."

99. Nevertheless, the Development Agreement was and remains a legally binding agreement between Gotion and the Township.[8]

100. Moreover, Supervisor Kruse continued to make statements in breach of the Township's obligations under the Development Agreement, stating that he was elected to be a "no-Gotion guy" and that the Township would "challenge Gotion" to prevent it from completing its Project.[9]

---

[8] In fact, both this Court and the 6th Circuit Court of Appeals have found that the Development Agreement is a binding agreement on the Township, and the Township's actions in rescinding the Water Resolution and Support Resolution likely a breach of its obligations under the Development Agreement. ECF No. 22, at PageID.345-351; ECF 105, at PageID.1434.

[9] P. Gardner, *New scrutiny challenges Michigan's investment in Gotion EV battery plant*, Bridge Michigan (Dec. 5, 2023) available at https://bridgemi.com/business-watch/new-scrutiny-challenges-michigans-investment-gotion-ev-battery-plant/ (last accessed May 25, 2026).

101.    These statements make clear that the newly elected Township Board had no intention with complying with its contractual obligations to support Gotion, and instead acted deliberately to breach the contract and rescind its support for the Project.

**Breach Letter and the Township's Response**

102.    On December 8, 2023, Gotion, through its counsel, notified the Township that it was in material breach of the Development Agreement. A copy of this letter is attached hereto as **Exhibit 11**.

103.    Gotion requested that the Township cure its breaches by rescinding the recently adopted resolutions and reinstating the Water Extension Resolution and the Support Resolution.

104.    Pursuant to the Development Agreement, the Township had 60 days from the date of the letter to cure as requested. Ex 1, Dev. Agmt. at § 7.g.a.

105.    On February 8, 2024, the Township refused to cure its breach. A copy of this letter is attached hereto as **Exhibit 12**.

106.    The letter "presumed that the Development Agreement is a binding and enforceable agreement on the parties," but added that "that presumption should not be construed as an admission by the Township that the Development Agreement is binding and enforceable." *Id.*

107.    In its letter, the Township did not dispute that the rescission of these resolutions was contrary to its obligations in the Development Agreement. Rather, the Township provided four supposed excuses for why it believed the rescissions of the Water Extension and Support Resolutions did not constitute a breach of the Development Agreement.

108.    First, it argued that the rescission of the Support Resolution did not affect the Project because the Support Resolution only "contained blanket *opinions*," and did not propose any particular action for the Project. *Id.*

109.   Second, the Township argued that the Project's need for water was not presently necessary because Gotion lacked various permits, governmental approvals, and "a finalized public Project design." *Id.*

110.   Third, it claimed that Gotion's December 8 letter indicated that Gotion believed the Township had no authority to approve expansions of the City's water system, and thus, should Gotion be correct, "Gotion should recognize that Township action is unnecessary for Proposed Project approvals and that the Township could not materially or adversely impact the Proposed Project." *Id.*

111.   Finally, the Township cited a December 6, 2023 article in the Big Rapids Pioneer that reported on "a very good meeting" between the Big Rapids City Manager and Township Supervisor Kruse, during which they discussed, among other topics, Gotion's proposed extensions to the water system.  The Township failed to mention that only days earlier, Supervisor Kruse was quoted by Bridge Michigan as being elected to be a "no Gotion guy."

112.   The Township included in its letter a list of six questions about the Project which the Township alleged to be "passing" to Gotion from "the public." *Id.* Most of the questions asked by the Township have nothing to do with the extension of water by the City.

113.   It also requested reasoning as to "why it will not answer" "if Gotion chooses to not answer" the questions. *Id.*

114.   A representative from Gotion has attended every Board meeting since November 2023 to answer questions from the Board and the public, and the questions asked have either been addressed by Gotion in those public meetings or are questions that Gotion presently could not provide an answer.

115.    Given this and the Township new Board's statements and actions, these questions were nothing more than theatrics to further delay, subvert and sow doubt and confusion amongst the public about Gotion's Project rather than any genuine attempt to work with Gotion and resolve any concerns the Township's residents may have.

**The Township Continues to Breach the Development Agreement**

116.    Despite the Township's refusal to cure its breach, Gotion still attempted to move ahead with the Project by performing work that did not need require any cooperation or approval from the Township, such as cutting trees and preparing Gotion's Project site.[10]

117.    Gotion even sunk significant dollars into expert and consultants' fees, including analysing water connections and site planning.

118.    Regardless of Gotion's efforts to perform in accordance with the Development Agreement in good faith, and even after Gotion provided its notice of the Township's breaches of the Development Agreement, the Township continued to take actions and make statements to intentionally interfere with Gotion's Project and ensure its demise in clear violation of the Development Agreement.

119.    For instance, shortly before this original lawsuit was filed, the Township held yet another series of special meetings in February 2024 to initiate a proposed ordinance to create a planning commission, even though Township citizens already voted down a referendum to create a planning commission in the November 2023 election. A copy of the February 21, 2024, meeting minutes is attached hereto as **Exhibit 13**.

---

[10] *See, e.g.*, R. White, *Gotion begins cutting trees to prep site for $2.4B battery plant, MLive* (Feb. 15, 2024) available at https://www.mlive.com/news/2024/02/gotion-begins-cutting-trees-to-prep-site-for-24b-battery-plant.html (last accessed May 25, 2026).

120. The Township Board indicated that it intended to appoint a 7-person planning commission to create township zoning, rezone Gotion's property, and reject all building permits.

121. On March 7, 2024, the Township served a Notice of Preliminary and Permanent Injunction on the Mecosta County Planning Commission. A copy of this Notice is attached hereto as **Exhibit 14**.

122. In the Notice, the Township threatened a lawsuit against the County if the County did not stop processing Gotion's site plan and special use permit application that was submitted to the County for review on March 1, 2024 even though the ordinance to establish a planning commission was not to take effect until April 27, 2024 at the earliest per Michigan's Zoning Enabling Act, and, at the time, the Township did not have a zoning ordinance in place that would confer zoning jurisdiction on the Township. (*Id.*)

123. The Township's March 7, 2024, Notice constitutes yet another breach of the Development Agreement, as it is a blatant refusal to "assist Gotion . . . in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project." *See* **Exhibit 1**, Dev. Agmt. § 4(c).

124. The Township went even further and adopted its "Interim Zoning Ordinance" on April 29, 2024, after Gotion filed its original complaint, without debate or input from its corporate resident Gotion.

125. The "Interim Zoning Ordinance" contains provisions clearly designed to obstruct and prevent Gotion from completing its Project, such as one year waiting periods to re-apply for denied permits and additional permitting requirements and processes for site size and raw materials processing that do not appear in the Mecosta County Zoning Ordinance (the

ordinance Gotion would have been subject to). A copy of the Township's April 29, 2024 Meeting Minutes and the Interim Zoning Ordinance is attached as **Exhibit 15**.[11]

126.    Then, on April 8, 2025, more than a year after the Court's Preliminary Injunction requiring the Township to perform the Development Agreement, the Township renewed its onerous Interim Zoning Ordinance.  A copy of the April 8, 2025 Township Meeting Minutes is attached as **Exhibit 16**.

127.    The Township's seizure of Mecosta County's zoning authority to undermine Gotion's Project, combined with the Township's adoption of the Resolution to Rescind and the rescissions of the Water Extension Resolution and the Support Resolution, all in violation of the Development Agreement, have caused Gotion to suffer millions of dollars in damages since the original Complaint was filed in March of 2024.

128.    Moreover, the Township and its prominent supporters, including national-level political leaders, continued to make statements and participate in political events in opposition to Gotion and in breach of the Development Agreement.

129.    For example, on July 26, 2024, Supervisor Kruse participated in a round table with United States Congressman John Moolenaar (R-MI) and Congressman Darin LaHood (R-IL) where a prominent topic of discussion was Gotion and its Project.  During this discussion, Gotion was referred to as a "bully" and many statements about Gotion and China were made that could only be described as uninformed, fear-mongering, and xenophobic.[12]

---

[11] A video of the April 29, 2024 meeting is also available on YouTube: https://www.youtube.com/watch?v=aQCCou7FNl0 (last accessed My 25, 2026).

[12] Cong. J. Moolenaar (R-MI), "MEDIA PACKAGE:  Moolenaar Hosts Community Roundtable on Gotion," Press Release (July 26, 2024) available at https://moolenaar.house.gov/media-center/press-releases/media-package-moolenaar-hosts-community-roundtable-gotion (last accessed May 19, 2026).

130.    The very next month in August 2024, even (then candidate) Vice President J.D. Vance stood next to Gotion's proposed site in the Township and decried it as a "threat to America's national security."

131.    Furthermore, after this Court found that Gotion was likely to succeed on the merits of its claim regarding the Township's breach of contract (ECF No. 22, at PageID.345-351) and ordered the Township to perform its obligations under the Development Agreement, the Township took the extraordinary step to attempt to stay and appeal the Court's ruling.  This action by the Township prolonged this litigation and effectively signaled that it did not intend to seriously perform according to the Development Agreement. It also clearly signaled that Gotion stood no chance of obtaining approval of key development milestones, or any modicum of cooperation from the Township.

132.    These actions by the Township and its supporters sent a clear message to Gotion:  Any attempt by Gotion to move forward with the Project, even with the Court's Preliminary Injunction, would be futile.

133.    These actions and the continued vitriol towards Gotion are also evidence of the Township's continued breach of the Development Agreement.

134.    The Township's continued breaches of the Development Agreement have completely undermined the Project and thereby unraveled an endeavor that were years and millions of dollars in the making.

**The Michigan Strategic Fund Letter of Default, Decision on Appeal and Gotion's Damages**

135.    On September 15, 2023, Gotion and the Michigan Strategic Fund ("**MSF**") entered into the Critical Industry Program Grant Agreement ("CIP Agreement").  A copy of the CIP Agreement is attached as **Exhibit 17**.

22

136.    The MSF is a Michigan state agency that assists in identifying and promoting opportunities for economic development in the State of Michigan.

137.    The CIP Agreement awarded Gotion $125 million in Critical Industry Program Grant funds from the Michigan Strategic Site Readiness Program ("SSRP") Fund and was approved by the MSF.

138.    Approximately $23,670,873.56 of these SSRP funds were dispersed and used for purchase and development of the land to be used for Gotion's Project.

139.    As evidenced by its land purchase and other actions described above, Gotion attempted to move forward with the Project in good faith, however, the actions and statements of the Township and its supporters made clear that any attempt to advance the Project would be futile.

140.    Moreover, Gotion and the Township were in active litigation regarding the Project where the Township was actively challenging a legitimate court order directing them to perform the Development Agreement, a clear sign that the Township had no intention to allow Gotion to move the Project forward.

141.    As a result, Gotion was not able to move the Project forward at the pace it wanted.

142.    As a result of the Township's actions, on September 17, 2025—nearly two years after filing of the original Complaint—the MSF notified Gotion of its intent to seek reimbursement of $23,670,873.56 in SSRP funds, claiming that Gotion had "abandoned" the Project. A copy of the MSF's letter is provided as **Exhibit 18**.  The MSF's notice provided no evidence or examples of alleged "abandonment" and made no mention of the Township's actions designed to prevent Gotion's progress.  The MSF also cited litigation threatened by the Township against Mecosta County regarding the Township's zoning authority as evidence of a default by Gotion, despite that action being taken unilaterally by the Township and without any support by Gotion.

143.   Simply put, it was the Township's actions in preventing Gotion from proceeding with the Project that directly resulted in the MSF issuing its notice of default to Gotion regarding the CIP Agreement.

144.   On October 15, 2025, Gotion, through counsel, responded to the MSF's notice, pointing out the Township's actions in causing the alleged  breach and recommended  that all parties, including the MSF, take an active role in resolving these issues.  A copy of Gotion's response is provided as **Exhibit 19**.

145.   On January 6, 2026, the 6th Circuit Court of Appeals took notice of the MSF's notice and, in light of the MSF's letter, requested Gotion and the Township to provide briefing on whether Gotion's claims as to its request for injunctive relief only were now moot.  *Gotion, Inc. v Green Charter Township*, Case No. 24-1783 (6th Cir.), ECF No. 45.

146.   On January 21, 2026 Gotion and the Township made submissions to the 6th Circuit regarding its questions.  Specifically, Gotion reiterated that the MSF's notice was caused by the Township's breach of the Development Agreement and, therefore, had no impact on the merits of the breach of contract claim, and that Gotion had been harmed, but now that harm could only be remedied by monetary damages.

147.   Gotion further stated that the only impact of the MSF's notice was lending more credibility to the fact that Gotion would not be able to complete its Project, prompting it to put the Township on notice that it intended to seek monetary damages for the Township's breach rather than injunctive relief.

148.   In response, the Township and its supporters denounced Gotion for seeking damages.  Put another way, the Township, after having breached the Development Agreement, and its supporters were now forced to reckon with the consequences of their actions.

149.	On January 30, 2026, the MSF issued a formal notice of default, confirming that although Gotion remained committed to a resolution, the MSF and the Township were not interested.  A copy of the default notice is attached as **Exhibit 20**.

150.	On February 25, 2026, the 6th Circuit Court of Appeals issued its decision holding that Gotion's claims were moot as to its request for injunctive relief only and remanded back to the District Court for further proceedings.  ECF No. 105.  Put another way, the merits as to the breach of contract were not moot, but given the MSF's notice of default, Gotion's  only available remedy was monetary damages.

151.	Notably, the 6th Circuit left in place this Court's finding that Gotion was "likely to succeed on the merits of its breach-of-contract claim against the Township.  *Gotion, Inc. v Green Charter Township*, Case No. 24-1783 (6th Cir.), ECF No. 48-2, at p. 4; *see also* ECF No. 105.

152.	Now, in order to protect its investment and address the harm suffered, and given that the 6th Circuit has found that injunctive relief is no longer viable here but that Gotion is still likely to succeed on its breach of contract claims, Gotion is left with no other option but to seek relief from this Court in the form of monetary damages owed to it by the Township for the Township's brazen breach of the Development Agreement and violation of Gotion's rights.

## COUNT I
### Breach of Development Agreement

153.	Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

154.	Gotion and the Township entered into a valid, binding contract in the form of the Development Agreement.

155.	Gotion has fully performed its obligations under the Development Agreement and remains ready, willing, and able to continue performance.

156. Under the Development Agreement, the Township is obligated to, among other things, "assist Gotion, to the extent legally permissible, in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project or conduct business to support the Project." *See* **Exhibit 1**, Dev. Agmt. § 4(c).

157. The Township breached the Development Agreement by its actions following the November recall election detailed herein, including but not limited to rescinding the Water Extension Resolution and the Support Resolution. *See* ECF No. 22, at PageID.345-351; *see also Gotion, Inc. v Green Charter Township*, Case No. 24-1783 (6th Cir.), ECF No. 48-2, at p. 4.

158. The Township further breached the Development Agreement through the March 7, 2024, Notice to the Mecosta County Planning Commission which threatens to enjoin the County from exercising its statutory obligations under the Zoning Enabling Act.

159. As a result of the Township's multiple breaches of the Development Agreement, Gotion has and will continue to suffer damages.

160. As an example of the damages Gotion has and will continue to suffer, the State of Michigan has demanded that Gotion reimburse $23,670,873.56 in SSRP funds. This is to say nothing of the significant consequential and compensatory damages that will continue to result from the Township's unlawful breaches.

161. Where a public entity like the Township breaches its obligations under a contract like the Development Agreement, "a remedy may be obtained in the form of compensatory damages." *See Eplee v. City of Lansing*, 327 Mich. App. 635, 646, 935 N.W.2d 104, 110 (2019) *citing In re Bradley Estate*, 494 Mich. at 371, 835 N.W.2d 545.

162.    Therefore, Gotion respectfully asks this Court to award all damages to Gotion, including but not limited to compensatory and actual damages such as lost profits, development costs, expert fees, and any other damages as a result of the Township's breaches of the Development Agreement in an amount to be determined at trial.

### COUNT II
### Violation of Gotion's Right to Equal Protection of Law Under the Michigan and United States Constitutions

163.    Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

164.    The Michigan Constitution provides that "No person shall be denied the equal protection of the laws."  MI CONST Art. 1, § 2.

165.    The United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

166.    "[T]he rights provided under the Michigan Constitution are coextensive with those provided under the United States Constitution." *Armco Steel Corp. v. Dep't of Treasury, Corp. Franchise Fee Div.*, 419 Mich. 582, 591 (1984).

167.    The general principle is that similarly situated persons should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). More specifically, the Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006).

168.    Here, the Township's targeting of Gotion cannot pass even rational basis review. "[R]ational basis review is not a rubber stamp of all legislative action," and "discrimination that can *only* be viewed as arbitrary and irrational *will* violate the Equal Protection Clause." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).  "[E]ven under the deferential and

forgiving rational basis standard of review, the law must have a legitimate purpose." *Bassett v. Snyder*, 59 F. Supp. 3d 837, 855 (E.D. Mich. 2014).

169. Government action based on animus or ill will towards an individual or group violates the rational basis test. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260-261 (6th Cir. 2006).

170. Importantly, "once animus is detected, the inquiry is over: the law is unconstitutional." *Bishop v. Smith*, 760 F.3d 1070, 1103 (10th Cir. 2014) (Holmes, J., concurring).

171. "The concept of animus focuses on legislative motivation….Those motives could be viewed as falling somewhere on a continuum of hostility toward a particular group." *Basset*, *supra*, at 847.

172. Indeed, as is the case with the Board, "[o]n the extreme end of the continuum, legislators may pass a law based on 'a desire to harm a politically unpopular group,'" such as Gotion. *Id.*

173. "[A] legislative motive may be to simply exclude a particular group from one's community for no reason other than an 'irrational prejudice' harbored against that group….In this sense, animus may be present where the lawmaking authority is motivated solely by the urge to call one group 'other,' to separate those persons from the rest of the community (i.e., an 'us versus them' legal construct)." *Bishop*, *supra*, at 1100 (Holmes, J., concurring).

174. Here, the Township's legislative actions—in the form of its Resolution to Rescind and its rescissions of the Water Extension Resolution and the Support Resolution as well as the threat to Mecosta County, taking zoning authority away from Mecosta County despite Gotion having already submitted its site plans, and passing and renewal of the Interim Zoning Ordinance— was a targeted effort to frustrate Gotion's investment in the Township.

175.    The entire basis of the Township's legislative action was animus toward Gotion, as the above allegations surrounding the recall election demonstrate.

176.    The explicit framing of the Board's breach was "an us versus them legal construct."

177.    The entire point of the recall election was "to simply exclude a particular group from one's community."

178.    Based on available information, the Township has never targeted any other developer, similarly situated or otherwise, in this manner and has never destroyed any other Project out of such blatant ill will and animus.

179.    Because the Township legislated out of animus directed at Gotion, its Resolution to Rescind, its rescissions of the Water Extension Resolution and the Support Resolution, actions to rip zoning authority away from Mecosta County despite Gotion having its site plans already submitted to Mecosta County, and the passage and renewal of the Interim Zoning Ordinance are unconstitutional; they violate Gotion's right to the equal protection of the laws under the Michigan and United States Constitutions.

180.    As a result of the Township's violation of Gotion's right to equal protection, Gotion has and will continue to suffer damages as alleged above and herein.

181.    Therefore, Gotion respectfully asks this Court to award damages to Gotion as a result of the Township's unconstitutional actions in an amount to be determined at trial.

**COUNT III**
**Violation of Gotion's Right to Substantive Due Process**

182.    Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

183.    "The United States and Michigan constitutions preclude the government from depriving a person of life, liberty, or property without due process of law. US Const., Am. XIV; Const.

29

1963, art. 1, § 17." *Hinky Dinky Supermarket, Inc. v. Dep't of Cmty. Health*, 261 Mich. App. 604, 605–06 (2004).

184. The United States Court of Appeals for the Sixth Circuit has recognized that "due process analysis in Michigan is the same as it is in the federal system." *Yinger v. City of Dearborn*, 66 F.3d 327 (6th Cir. 1995).

185. "The Due Process Clause has two components, one procedural and the other substantive." *Glaspy v. Malicoat*, 134 F. Supp. 2d 890, 894 (W.D. Mich. 2001).

186. "To sustain a substantive due process claim against municipal actors, the governmental conduct must be so arbitrary and capricious as to shock the conscience." *Mettler Walloon, L.L.C. v. Melrose Twp.*, 281 Mich. App. 184, 198 (2008). "[W]hen evaluating municipal conduct vis-à-vis a substantive due process claim…the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 197. In passing the Resolution to Rescind, the Township's actions were arbitrary and motivated by anti-Gotion animus.

187. The Township went so far as to replace its entire legislative body for the *express purpose* of breaching a valid, fair, and binding contract.

188. The Township even purposefully sent a threatening letter to and subsequently ripped zoning authority away from Mecosta County when Gotion had already submitted its site proposals to Mecosta County, then passed and renewed the Interim Zoning Ordinance to target Gotion and its Project.

189. Such egregious abuse of official power shocks the conscience.

190. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Mettler Walloon, L.L.C.*, *supra* at 209 (quoting *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56,

62 (9th Cir. 1994).  "The right to pursue a lawful business," in turn, "has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments of the Constitution."  *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969).

191.    Here—as a threshold matter—Gotion had a property interest in pursuing its lawful EV components manufacturing business through its rights under the Development Agreement and the Water Extension Resolution.  The Township violated that property interest in contravention of the Fifth and Fourteenth Amendments of the United States Constitution.  Therefore, the Township's actions in adopting the Resolution to Rescind, wrestling zoning authority away from Mecosta County, and passing and renewing the Interim Zoning Ordinance violate Gotion's right to substantive due process.

192.    Additionally, the Supreme Court of the United States has "emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government,'" including when "the fault lies…in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).  "[D]ue process protection in the substantive sense limits what the government may do in…its legislative…capacity[y]."  *Id.* at 846.

193.    In passing the Resolution to Rescind—without even a pretextual justification—the Township has exercised its legislative power without any reasonable justification in service of a legitimate governmental objective.  Accordingly, the Township has violated Gotion's right to substantive due process under the United States and Michigan Constitutions.

194.    As a result of the Township's violation of Gotion's right to substantive due process, Gotion has and will continue to suffer damages as alleged above and herein.

195.   Therefore, Gotion respectfully asks this Court to award damages to Gotion as a result of the Township's unconstitutional actions in an amount to be determined at trial.

**COUNT IV**
**Violation of the State and Federal Contracts Clauses**

196.   Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

197.   The Contract Clauses of the United States and Michigan Constitutions both "prohibit laws impairing the obligation of contracts." *AFT Michigan v. State of Michigan*, 497 Mich. 197, 209 (2015).

198.   The Resolution to Rescind and Interim Zoning Ordinance are laws.

199.   The Resolution to Rescind and Interim Zoning Ordinance impaired the contractual obligations of both the Township and Gotion under the Development Agreement.

200.   Moreover, the Township purposefully ripped zoning authority away from Mecosta County through a threatening letter then passed and renewed the Interim Zoning Ordinance to target Gotion and its Project.

201.   Additionally, the Resolution to Rescind and Interim Zoning Ordinance has prevented Gotion from complying with its contractual obligations under the 2023 Grant Agreement between Gotion and the MSF, which led to the MSF's September 17, 2025, letter to Gotion indicating that the MSF will seek reimbursement of $23,670,873.56 in SSRP funds.

202.   Furthermore, the public statements of the Township's board and political allies made clear that its Resolution to Rescind and Interim Zoning Ordinance were targeted legislation designed to prevent Gotion from complying with its contractual obligations and use of its property in moving the Project forward.

203.   Lastly, this Court has also found that the Resolution to Rescind and the Township's other actions was likely a breach of the Development Agreement.  *See* ECF No. 22, at PageID.351 and ECF No. 23

204.   Therefore, in passing the Resolution to Rescind and passing and renewing the Interim Zoning Ordinance, combined with the public statements and intentional hostile environment created to target Gotion, the Township violated the Contract Clauses of both the United States and Michigan Constitutions.

205.   As a result of the Township's violation of the Contracts Clauses, Gotion has and will continue to suffer damages as alleged above and herein.

206.   Therefore, Gotion respectfully asks this Court to award damages to Gotion as a result of the Township's unconstitutional actions in an amount to be determined at trial.

**COUNT V**
**Taking without Just Compensation**

207.   Gotion realleges and incorporates by reference the allegations of the preceding paragraphs.

208.   The Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. The Michigan Constitution, MI CONST Art. 1, § 2., similarly provides that private property shall not be taken without just compensation.

209.   Although the government can regulate how property owners use their property, "if regulation goes too far it will be recognized as a taking." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

210.   If a regulation does not deprive a property owner of all economically beneficial use of the property, "a taking still may be found based on a complex of factors." *Murr v. Wisconsin*, 582 U.S. 383, 393, 137 S.Ct. 1933, 198 L.Ed.2d 497 (2017). These factors include: (1) "[t]he

economic impact of the regulation," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

211.   Here, the Township's actions have had an enormous economic impact on Gotion, and will continue to do so as described herein. Further, the Township's actions have completely destroyed Gotion's investment-backed expectations to operate the Project. Finally, the character of the governmental action shocks the conscience. The current Township leadership was elected for the self-proclaimed purpose of destroying Gotion's Project and it has acted accordingly.

212.   Further, it is clear based on the Township's demonstrated animus toward Gotion that further proceedings would not be productive.  Therefore, the parties are at an impasse, and no further proceedings at the Township level have any chance of resolving the matter.

213.   The Township's actions in this case amount to a regulatory taking. Gotion is therefore entitled to, and requests an order awarding it just compensation in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Gotion respectfully requests this Court find in its favor on the First Amended Complaint and issue a judgment against the Township that grants the following relief:

A.  Compensatory damages, including but not limited to, actual, direct, and indirect damages, in an amount to be determined at trial including but not limited to, damages resulting from the millions of dollars that Gotion paid for or otherwise spent in reliance on being able to proceed with the Project;

B.  Consequential damages including, but not limited to, lost  profits that Gotion would have earned from operating the manufacturing facility for years in the future, and loss of valuable incentives from the local and state governments including but not limited to, Gotion's inability to realize hundreds of millions of dollars in grants, tax incentives, and other economic incentives previously awarded for this Project that cannot be realized;

C.  Direct damages in an amount of not less than $23,670,873.56 for funds advanced towards land and development costs related to the Project that the state of Michigan is now claiming should be repaid due to Gotion's inability to proceed with the Project and that are directly a result of the Township's actions;

D.  Punitive damages arising from the Township's willful misconduct in violating Gotion's rights;

E.  An award of costs and attorneys' fees pursuant to 28 USC § 1988; and

F.  Any other relief this Court deems just and fair.

Dated:  _____, 2026                                Respectfully submitted,

                                                                  /s/ Mark V. Heusel
                                                                  Mark V. Heusel (P47528)
                                                                  Jacob L. Clark (P81379)
                                                                  DICKINSON WRIGHT PLLC
                                                                  350 S. Main St., Ste. 300
                                                                  Ann Arbor, MI  48104
                                                                  Tel: (734) 623-7075
                                                                  MHeusel@dickinsonwright.com
                                                                  JLclark@dickinsonwright.com